DIANNE FELLOWS *v.* MARJORIE MARTIN
(14055)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, JS.

Argued September 27, 1990—decision released January 1, 1991

*Joel M. Ellis,* with whom was *Gregory J. Sherman,* for the appellant (defendant).

*Lois Frankforter,* for the appellee (plaintiff).

SHEA, J. The defendant tenant appeals from a judgment for the plaintiff landlord in a summary process action seeking possession of the leased premises for nonpayment of rent. The dispositive issue on appeal is whether the trial court erred in refusing to prevent the forfeiture of the lease on equitable grounds when the lessor's loss was small, the default slight, and the hardship to the tenant great. Although the tenant's appeal also raised five other issues, only one of these (the variance between the allegations in the complaint and the evidence offered by the landlord) was fully presented at trial.[1] Because we reverse the decision on

---

[1] The tenant argued on appeal that (1) the variance between the complaint and the proof as to the amount of rent due was fatal to the action;

equitable grounds, we do not consider the merits of these other claims or their reviewability.

I

The trial court found the following facts. On March 4, 1983, the landlord leased a duplex apartment in East Hartford to the tenant for a term of ninety-nine years. The terms of the lease required the tenant to make a down payment in cash ($9900[2] paid at the execution of the lease), monthly payments for forty years on a promissory note ($419.57 per month), and monthly payments for the property tax ($54.48 per month) and insurance ($25.96 per month).[3] The lease also required the tenant to pay the landlord's actual costs of exterior maintenance. The trial court found that the total amount of "rent" due was $500.01.[4] The tenant with-

(2) the tenant was entitled to a credit for unpaid accrued interest on her advance rental payment because it was a security deposit under the summary process statute; (3) the tenant was entitled to a credit for previous overpayment of maintenance charges that the landlord was required by the lease to substantiate and could not; (4) the landlord violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., by filing an inaccurate complaint, overcharging for maintenance, failing to refund twice the alleged security deposit and failing to pay interest on the alleged security deposit; and (5) the landlord violated CUTPA by disguising a mortgage as a ninety-nine year lease in order to circumvent the protections of a foreclosure proceeding. The tenant did present a CUTPA claim to the trial court, but alleged different unfair trade practices from those underlying her arguments (4) and (5). The tenant did not present claims (2) and (3) to the trial court until after judgment was rendered against her.

[2] The $9900 paid at the time of execution actually consisted of $2000 previously paid by the tenant for an option to buy the premises, $4800 previously paid by the tenant for the past year's rent for the premises, and $3100 in cash.

[3] Thus, the lease resembled a seller-financed condominium sale, the principal difference being that upon final payment of the promissory note, the tenant received a term interest (ninety-nine years reduced by forty years) instead of a fee interest in the property.

[4] The complaint alleged that the monthly rent totaled $525.01. This figure included a maintenance charge that had been regularly assessed at $25 per month. At trial, the landlord abandoned this figure and accepted the

held $25 from her rent check in April, 1988, because of a dispute over her parking accommodations. The landlord served the tenant with a notice to quit and commenced a summary process action to evict her from the premises.

The trial court rejected the tenant's special defenses of estoppel, based on the landlord's prior acceptance of amounts less than the full amount of rent, and satisfaction, based on the prior payment of $9900. In addition to her special defenses, the tenant also raised two counterclaims, seeking, inter alia, "[d]enial of the summary process action on equitable grounds." Counsel agreed at oral argument, and the transcript and trial briefs clearly show, that the trial court heard and considered the tenant's arguments in equity.

## II

As a threshold matter, we must decide whether the tenant was entitled to raise an equitable defense or counterclaim in a summary process action. We last considered this issue forty-five years ago in *Atlantic Refining Co.* v. *O'Keefe,* 131 Conn. 528, 531, 41 A.2d 109 (1945), when we held that neither equitable nor legal counterclaims were available in summary process actions.[5] When *Atlantic Refining Co.* was decided, however, summary process actions were still decided by justices of the peace in the "justice courts," which did not have jurisdiction over equitable issues.[6] *Giering* v.

figure of $500.01 found by the trial court. The tenant raised a defense of variance at trial and on appeal, but because we vacate the judgment below, we need not consider this issue.

[5] The trial court relied on *Atlantic Refining Co.* v. *O'Keefe,* 131 Conn. 528, 41 A.2d 109 (1945), when dismissing the tenant's CUTPA counterclaim as "not actionable" because "[c]ounterclaims seeking money damages are not permitted in summary process actions." The trial court did not explicitly address the tenant's request for equitable relief, which was included in the counterclaim.

[6] The Circuit Court, which heard summary process actions after the justice courts were abolished; Public Acts 1959, No. 28, § 204; also refused

*Hartford Theological Seminary,* 86 Conn. 208, 212, 84 A. 930 (1912). Summary process defendants at that time could not, therefore, raise equitable defenses, but could and did bring separate actions in equity to enjoin the prosecution of summary process actions.[7]

In the years since *Atlantic Refining Co.,* the legislature abolished the justice courts; Public Acts 1959, No. 28, §§ 130, 204; and, in 1978, created the housing docket of the Superior Court. Public Acts 1978, No. 78-365. In addition to hearing summary process actions; General Statutes §§ 47a-68 (a), 51-165; "housing court" judges hear actions on a wide range of "housing matters" including administrative appeals, building code violations and "[a]ll actions for back rent, damages, return of security deposits and other relief arising out of the parties' relationship as landlord and tenant or owner and occupant." General Statutes § 47a-68 (c), (f), (h).

After the creation of the housing docket in 1978, numerous Connecticut courts have concluded that defendants in summary process actions may raise equitable defenses and counterclaims, including the equitable doctrine against forfeitures. *Morin* v. *DeMarco,* 18 Conn. App. 417, 557 A.2d 1287 (1989); *Tartaglia* v. *R.A.C. Corporation,* 15 Conn. App. 492, 545 A.2d 573, cert. denied, 209 Conn. 810, 548 A.2d 443 (1988); *Elliott* v. *South Isle Food Corporation,* 6 Conn. App.

to hear equitable defenses. See *Dreifuss* v. *World Art Group, Inc.,* 6 Conn. Cir. Ct. 309, 272 A.2d 144, cert. denied, 160 Conn. 567, 269 A.2d 293 (1970).

[7] Even after the justice courts were abolished, summary process defendants continued to bring separate actions for injunctive relief on equitable grounds. Such actions have frequently been successful. See *Nicoli* v. *Frouge Corporation,* 171 Conn. 245, 368 A.2d 74 (1976); *Galvin* v. *Simons,* 128 Conn. 616, 25 A.2d 64 (1942); *R & R of Connecticut, Inc.* v. *Stiegler,* 4 Conn. App. 240, 493 A.2d 293 (1985); *Damato* v. *Gilman,* 16 Conn. Sup. 276 (1949); *Syncro Flame Burner Corporation* v. *Windham Development Co.,* 11 Conn. Sup. 28 (1942); but see *Brauer* v. *Freccia,* 159 Conn. 289, 268 A.2d 645 (1970); *Alpert* v. *Peloquin,* 96 Conn. 626, 115 A. 81 (1921); *Wienski* v. *Wallace Motors, Inc.,* 16 Conn. Sup. 57 (1948).

373, 506 A.2d 147 (1986); *750 Main Street Associates* v. *Specter,* 5 Conn. App. 170, 497 A.2d 96 (1985); *Mobilia, Inc.* v. *Santos,* 4 Conn. App. 128, 492 A.2d 544 (1985); *Filosi* v. *Hawkins,* 1 Conn. App. 634, 635 n.1, 474 A.2d 1261 (1984); *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 445, 473 A.2d 318 (1984); *Haddad* v. *Francis,* 40 Conn. Sup. 567, 537 A.2d 174 (1986), aff'd, 13 Conn. App. 324, 536 A.2d 592 (1988); *Zitomer* v. *Palmer,* 38 Conn. Sup. 341, 446 A.2d 1084 (1982); *Danpar Associates* v. *Falkha,* 37 Conn. Sup. 820, 438 A.2d 1209 (1981); *S.H.V.C., Inc.* v. *Roy,* 37 Conn. Sup. 579, 428 A.2d 806 (1981), aff'd, 188 Conn. 503, 452 A.2d 638 (1982); *Mark I Enterprises, Inc.* v. *Sendele,* 37 Conn. Sup. 569, 572, 427 A.2d 1352 (1981); *Steinegger* v. *Fields,* 37 Conn. Sup. 534, 537, 425 A.2d 597 (1980). Those courts that enunciated their underlying rationale reasoned that the ban on equitable issues in summary process proceedings arose from the jurisdictional limitations of the extinct justice courts, and concluded that the ban should be abolished. See, e.g., *Southland Corporation* v. *Vernon,* supra.

We agree that there is no longer sufficient justification for the old prohibition against the application of equitable principles barring forfeitures to summary process, that the prohibition, arising from an obsolete system, is itself obsolete, and that equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding.[8] If, then,

---

[8] Neither party has discussed the application of General Statutes § 52-122 to the issue before us. That statute provides that "[s]ections 52-1, 52-45a, 52-45b, 52-97 and 52-279 *shall not affect* flowage petitions, or proceedings in paternity, replevin, summary process, habeas corpus, mandamus, ne exeat, quo warranto, forcible entry and detainer or peaceable entry and forcible detainer, or for the payment of rewards," (emphasis added) and was enacted in substantially the same form in 1879. When enacted, it created an exception to the provisions of the Practice Act of 1879, which declared that legal and equitable claims could be brought in the same action. See General Statutes §§ 52-1 and 52-97. Section 52-122 has been amended periodically to

the tenant's equitable claim was properly raised, it was properly before the trial court.[9]

reflect changes in numbering and to delete references to obsolete statutes, most recently by Public Acts 1982, No. 82-160, § 51, Public Acts 1981, No. 81-410, § 13, and Public Acts 1965, No. 574, § 40.

At first glance, § 52-122 appears to conflict with Practice Book §§ 116, 133 and 169. Practice Book § 116, in particular, provides that "[i]n *any* action for legal or equitable relief, *any* defendant may file counterclaims against any plaintiff" (emphasis added), and § 169 provides that withdrawal of an action after an equitable counterclaim is filed shall not impair the defendant's right to prosecute the counterclaim. Section 52-122 provides, however, only that the listed statutes "shall not affect" proceedings in summary process. The summary process statute, General Statutes §§ 47a-23 through 47a-42, does not itself expressly prohibit the court from ruling on equitable and legal issues in the context of a summary process action, and, indeed, § 47a-39, entitled "Court may grant stay of execution," contemplates that the court will undertake a traditionally equitable consideration of the defendant's need for a stay. It is well established that the summary process statute provides landlords with an expedited eviction process that is in derogation of the common law action in ejectment; *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973); and as such, shall be narrowly construed. *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 601, 96 A.2d 217 (1953). Given the broad scope of authority now vested in the Superior Court housing session by the enactment of No. 78-379 of the 1978 Public Acts, including the authority to decide "[a]ll actions for . . . other relief arising out of the parties' relationship as landlord and tenant or owner and occupant"; General Statutes § 47a-68 (h); and to decide cases related to the same landlord-tenant relationship that have been brought in other courts upon their transfer to the housing docket; General Statutes § 47a-70 (b); we decline to read the summary process statute to prohibit consideration, in a single action, of equitable issues relating to a summary process action brought to the housing docket.

There is an additional reason for allowing the doctrine against forfeitures to be raised as a defense to a summary process action despite the language of § 52-122. Even at common law, forfeitures are traditionally disfavored. Before the enactment of the Practice Act of 1879, common law courts occasionally allowed a defense against forfeiture upon motion, if all arrearages, interests and costs were paid. See *Sheets* v. *Selden,* 74 U.S. (7 Wall.) 416, 421, 19 L. Ed. 166 (1868); 2 J. Taylor, American Law of Landord and Tenant (9th Ed.) § 495; 1 H. Underhill, Landlord and Tenant § 411. Were we to read § 52-122 as excluding summary process from the rule allowing equitable and legal claims in the same action, such a common law defense against forfeitures might still be available. See *Seaboard Oil Co.* v. *Williamson,* 1 Conn. Sup. 47 (1935) (allowing such a defense).

[9] The concurring opinion expresses concern that to allow "any and all equitable considerations" to be raised in a summary process action will seri-

### III

The tenant's answer did not raise the equitable doctrine against forfeitures as a defense to the summary process action but instead sought by way of a counterclaim the "denial of the summary process action on equitable grounds." The doctrine against forfeiture was, however, considered in principle by the trial court and briefed by the tenant. The tenant thus raised the issue below sufficiently for us to consider it upon review, particularly in light of the doctrine that once any equitable claim has been raised, the court retains its equitable jurisdiction to consider all of the equities before it in order to render complete justice; *Natural Harmony, Inc.* v. *Norman,* 211 Conn. 145, 149, 558

---

ously impair the usefulness of this statutory procedure as an " 'expeditious remedy to the landlord seeking possession,' " quoting *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973). We disagree that such a development is sanctioned by our opinion. First, it should be noted that our holding does not involve equitable considerations generally, but declares only that "equitable defenses and counterclaims *implicating the right to possession* are available in a summary process proceeding." (Emphasis added.) Second, even if we were to preclude such equitable defenses in the summary process action itself, a separate action raising the same equitable considerations could be filed in the housing court as a basis for enjoining the eviction and would presumably be tried with the summary process action, if the right to possession was at issue. To allow the same matters to be raised in the summary process action without the necessity of commencing a separate suit for injunctive relief should result in a more expeditious resolution of all the issues relating to possesion in a single action. Third, our view that equitable claims involving the right to possession may properly be raised in a summary process action is no great departure from precedent, as evidenced by the lower court cases that have disregarded or distinguished *Atlantic Refining Co.* v. *O'Keefe,* 131 Conn. 528, 41 A.2d 109 (1945), since the abolition of the justice of the peace courts. See, e.g., *Filosi* v. *Hawkins,* 1 Conn. App. 634, 635 n.1, 474 A.2d 1261 (1984); *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 445, 473 A.2d 318 (1984); *S.H.V.C., Inc.* v. *Roy,* 37 Conn. Sup. 579, 583–84, 428 A.2d 806 (1981), aff'd, 188 Conn. 503, 450 A.2d 351 (1982); *Mark I Enterprises, Inc.* v. *Sendele,* 37 Conn. Sup. 569, 572, 427 A.2d 1352 (1981); *Steinegger* v. *Fields,* 37 Conn. Sup. 534, 537, 425 A.2d 597 (1980).

A.2d 231 (1989); *McGaffin* v. *Roberts,* 193 Conn. 393, 404, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *Clipfel* v. *Kantrowitz,* 143 Conn. 184, 188, 120 A.2d 416 (1956); *Beardsley* v. *Halls,* 1 Root 366 (1792); even where the equitable jurisdiction was conferred by a defendant's counterclaim. *Seymour Water Co.* v. *Horischak,* 149 Conn. 435, 442, 181 A.2d 112 (1962).

## IV

" 'Equity abhors . . . a forfeiture.' " *Menzies* v. *Fisher,* 165 Conn. 338, 357, 334 A.2d 452 (1973), quoting *Pierce* v. *Staub,* 78 Conn. 459, 466, 62 A. 760 (1906); *Sheets* v. *Selden,* 74 U.S. (7 Wall.) 416, 421, 19 L. Ed. 166 (1868). It is well settled that equity will relieve against the forfeiture of a lease for nonpayment of rent. *Kann* v. *King,* 204 U.S. 43, 27 S. Ct. 213, 51 L. Ed. 360 (1907); *Sheets* v. *Selden,* supra, 421; 1 Restatement (Second), Property, Landlord and Tenant § 12.1, comment (n); J. Eaton, Handbook of Equity Jurisprudence (2d Ed.) § 27; H. McClintock, Handbook of Equity § 31; 2 J. Pomeroy, Equity Jurisprudence as Administered in the United States of America (5th Ed.) § 453; 3 J. Story, Equity Jurisprudence (14th Ed.) § 1727; see *Nicoli* v. *Frouge Corporation,* 171 Conn. 245, 246, 368 A.2d 74 (1976); *Thompson* v. *Coe,* 96 Conn. 644, 115 A. 219 (1921). This ancient principle allows relief because "[i]n reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party." 3 J. Story, supra, § 1728. The "penalty" is the forfeiture of the leasehold, imposed for "omission to do a particular act," that is, to pay rent; if the payment may be secured without a forfeiture, equity will not permit a forfeiture. J. Eaton,

supra, § 34; 2 M. Friedman, Leases (2d Ed. 1983)
§ 16.2; H. McClintock, supra, § 31; J. Story, supra; 2
J. Taylor, American Law of Landlord and Tenant (9th
Ed.) § 495; 2 H. Tiffany, Law of Landlord and Tenant
§ 194 (3).

Connecticut Appellate and Superior Courts have
applied the ancient equitable doctrine against forfei-
tures to summary process actions for nonpayment of
rent and have occasionally, on the particular facts of
each case, granted relief to the tenant. *Danpar Associ-
ates* v. *Falkha,* supra; *Syncro Flame Burner Corpora-
tion* v. *Windham Development Co.,* 11 Conn. Sup. 28
(1942); *Seaboard Oil Co.* v. *Williamson,* 1 Conn. Sup.
47 (1935); *Dinardo* v. *Preston,* Superior Court, judicial
district of New Haven, Housing Session, Docket No.
SPNH8912-023883 (July 18, 1990), 16 Conn. Law Trib.
No. 38, p. 33; *Googel* v. *Genesis Health Ventures, Inc.,*
Superior Court, judicial district of Hartford-New Brit-
ain at Hartford, Housing Session, Docket No.
SPH8604-32516 (March 23, 1987), 2 C.S.C.R. 558.
More often, while applying the same doctrine to differ-
ent facts, our courts have declined to grant such relief
to tenants. See, e.g., *Morin* v. *DeMarco,* supra; *Elliott*
v. *South Isle Food Corporation,* supra; *Mobilia, Inc.* v.
*Santos,* supra; *Haddad* v. *Francis,* supra; *Zitomer* v.
*Palmer,* supra; *S.H.V.C., Inc.* v. *Roy,* supra; *Steineg-
ger* v. *Fields,* supra.

The factors considered by these courts in deciding
whether to grant equitable relief in nonpayment cases
are those suggested by Justice Story in his learned trea-
tise, namely, (1) whether, in the absence of equitable
relief, one party will suffer a loss *"wholly dispropor-
tionate* to the injury to the other party"; (emphasis
added) 3 J. Story, supra, § 1728; and (2) whether the
injury to the other party is reparable. See 3 J. Story,
supra; see also *Petterson* v. *Weinstock,* 106 Conn. 436,
443–44, 138 A. 433 (1927). We applied a similar balanc-

ing test in two landlord-tenant cases, *Fountain Co.* v. *Stein,* 97 Conn. 619, 624, 118 A. 47 (1922) (a lease renewal case), and *Nicoli* v. *Frouge Corporation,* supra, 247 (a breach of covenant case).[10]

A court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief; thus, a tenant whose breach was "willful" or "grossly negligent" will not be entitled to relief. *Fountain Co* v. *Stein,* supra, 624; see also *Tartaglia* v. *R.A.C. Corporation,* supra, 494; but see *Thompson* v. *Coe,* supra, 656, discussing *Mactier* v. *Osborn,* 146 Mass. 399, 402, 15 N.E. 641 (1888); 27 Am. Jur. 2d, Equity § 82; C. Lewis, The Law of Leases 62; 1 H. Underhill, A Treatise on the Law of Landlord and Tenant § 411 (equity will relieve against forfeiture of a lease for nonpayment of rent even where tenant's breach is wilful).

## V

Applying these considerations to the undisputed facts of this case, we conclude that eviction of the tenant would work a forfeiture "wholly disproportionate to the injury suffered." In essence, the trial court ruled that for want of a $25.01 payment, withheld because of a dispute over a parking space, the tenant must forfeit a ninety-nine year lease and an advance rental payment of $9900. Although we ordinarily are reluctant to interfere with a trial court's equitable discretion; *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983); see also *Natural Harmony, Inc.* v. *Norman,* supra,

---

[10] The Appellate Session of the Superior Court discussed the same principle in a recent nonpayment case, *Danpar Associates* v. *Falkha,* 37 Conn. Sup. 820, 438 A.2d 1209 (1981). In that case, however, the court appeared to rely instead upon the well established rule that "a court of equity, even in the absence of fraud, accident or mistake, may relieve against a forfeiture resulting from the breach of a covenant to pay rent upon payment or tender of all arrears of rent with interest. *Thompson* v. *Coe,* 96 Conn. 644, 655, 115 A. 219 (1921)." Id., 823.

149–50; we will reverse where we find that a trial court acting as a court of equity could not reasonably have concluded as it did; *Leveston* v. *Leveston,* 182 Conn. 19, 23, 437 A.2d 819 (1980); or to prevent abuse or injustice. *Montanaro Bros. Builders, Inc.* v. *Snow,* 4 Conn. App. 46, 54, 492 A.2d 223 (1985). This case presents just such a situation. Applying the maxim "de minimis non curat lex," we find that under the circumstances presented, the underpayment of $25.01 is insufficient, as a matter of law, to justify such a forfeiture.[11]

We need not decide whether a tenant who deliberately refuses to pay rent may yet claim relief under the equitable doctrine against forfeitures where the forfeiture is as grossly disproportionate as it is in this case. Here, the trial court found that the tenant withheld the rent in a dispute over her parking accommodations. She apparently believed that she had the right to withhold rent if her landlord breached the lease. While her belief was erroneous; see *Thomas* v. *Roper,* 162 Conn. 343, 346, 294 A.2d 321 (1972) (as a general rule, covenants in a lease are independent); her misconception amounts to a mistake of law, rather than the type of "wilfulness" disapproved by *Fountain* v. *Stein,* supra, and other authorities. See *Petterson* v. *Weinstock,* 106 Conn. 436, 444, 138 A. 433 (1927). Indeed, we have specifically held that a court of equity may grant relief from a forfeiture when the defendant's omission was caused by an error of law. *Connecticut National Bank* v. *Chapman,* 153 Conn. 393, 398, 216 A.2d 814 (1966); *Bronson* v. *Leibold,* 87 Conn. 293, 87 A. 979 (1913) (the court granted the defendant tenant's equitable counterclaim

---

[11] In 1928, considering an appeal on an action to recover the balance due on a $10,500 construction contract, we held that a discrepancy of $21 was "de minimis." *Zajonc* v. *Szrzepowski,* 107 Conn. 532, 534–35, 141 A. 651 (1928). If $21 was de minimis in 1928, it is safe to say that $25.01 is de minimis today.

in a landlord's action to recover rent, where a buyer-mortgagor, mistaken as to his legal rights, reconveyed his property to the seller-mortgagee, who then ejected him for nonpayment of rent). The doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease. 2 M. Friedman, supra, § 16.2, pp. 840–41; 2 J. Pomeroy, supra, § 292.[12]

## VI

Although the trial court's judgment must be set aside, we are mindful that the equitable doctrine against forfeitures presupposes that the landlord's injury is reparable—that is, the landlord's injury can be remedied by money instead of forfeiture of the tenancy.

Here, the tenant admits that her payment was $25.01 short of the amount the trial court found to be the rent due, $500.01. The record suggests that after service of the notice to quit, she resumed monthly payments of a sum in excess of that amount, that is, $525.01, the sum the landlord initially claimed.[13] On remand, the trial court should hear evidence concerning this issue.

Because the trial court could not reasonably have failed to grant equitable relief to the tenant by relieving her from forfeiture of the lease, we reverse the judgment of possession on the complaint, but remand

[12] That the tenant also had legal self-help rights under General Statutes §§ 47a-13 and 47a-14h is irrelevant. At least on their face, those sections appear to apply, respectively, only to a landlord's failure to supply "essential services" or to comply with the provisions of General Statutes § 47a-7. Interference with a tenant's parking space would not appear to come within those provisions.

[13] The payments were tendered as rent, but accepted by the landlord as "use and occupancy," thus eliminating any potential claim by the tenant that the landlord had waived the default and renewed the tenancy. See *Borst* v. *Ruff,* 137 Conn. 359, 361, 77 A.2d 342 (1950); *Alteri* v. *Layton,* 35 Conn. Sup. 258, 259, 408 A.2d 17 (1979).

for further proceedings regarding the amount due the landlord. We affirm the dismissal of the counterclaim to the extent that it claimed damages, because its prayers for monetary relief did not implicate the right to possession.

In this opinion GLASS and BORDEN, Js., concurred.

PETERS, C. J., with whom CALLAHAN, J., joins, concurring. I concur in the judgment that, in the circumstances of this case, summary process would result in so unwarranted a forfeiture that the trial court should not have granted possession to the landlord. Neither the briefs nor the record, however, furnish a basis for the majority opinion's sweeping changes in the law of summary process.

My concerns arise out of the significant difference in the configuration of this case at trial and in the majority opinion in this court. At trial, the tenant resisted summary process by alleging three special defenses and a two count counterclaim.

The trial court considered and rejected each of the tenant's special defenses on their merits, and thus concluded that the landlord had not failed to fulfill her maintenance obligation, was not estopped from declaring a forfeiture, and had not been paid in full at the time of bringing her action. The majority opinion accepts the propriety of these rulings.

The trial court also rejected the tenant's two part counterclaim, one part of which reiterated a claim that the landlord had defaulted in her maintenance obligations, and the other of which sought relief under the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes 42-100 et seq. The court's ruling on the counterclaim was addressed solely to the form of relief being sought. The court mistakenly dismissed the counterclaim out-of-hand, as improperly seeking mone-

tary damages, when in fact the prayer for relief had sought not only damages but also specific performance and "denial of the summary process action on equitable grounds."

It bears mention, however, that the two counts of the counterclaim have not been established on their merits. The first count merely reiterated, and sought equitable relief for, the same dispute about maintenance obligations that the trial court, in its memorandum of decision, had already rejected as a special defense. Inferentially, the trial court intended the same ruling on the counterclaim, which by its own terms, apart from the later prayer for relief, sought specific performance. It is entirely plausible that the court's reference to monetary damages related solely to the second count, premised on CUTPA, whose merits, despite extensive appellate advocacy on behalf of the tenant, have not found favor in this court.[1]

In precise procedural terms, therefore, the question is whether a tenant, who has not established a substantive basis either for her special defenses or for her counterclaims, has distinctly alerted a trial court to wide-ranging equitable issues merely by appending an unstructured request for "denial of the summary process action on equitable grounds" to an unsustainable counterclaim. To my mind, an affirmative answer to this question is doubtful at best.

On this state of the record,[2] I am persuaded that this case does not furnish us the proper occasion for con-

[1] The tenant's trial court motions for reargument and for articulation appear to reflect the same understanding, because the court was asked to focus its attention on the alleged availability of equitable relief under CUTPA. Nowhere in the motion for articulation did the tenant ask the trial court to explain whether and why it had refused to deny summary process on equitable grounds in relation to the first count of the counterclaim.

[2] The briefs filed in this court, although they cite *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 473 A.2d 318 (1984), do not contain any reasoned argument about the extent to which equitable issues can appropriately be resolved in the context of summary process actions.

sideration of the extent to which any and all equitable considerations now inform the availability of a statutory right to summary process. General Statutes §§ 47a-23 through 47a-42. The need to retain summary process as an "expeditious remedy to the landlord seeking possession"; *Prevedini* v. *Mobil Oil Corporation,* 164 Conn. 287, 292, 320 A.2d 797 (1973); must be balanced against the broad jurisdiction now conferred upon the judges of the Superior Court hearing cases in the housing division. See *Southland Corporation* v. *Vernon,* 1 Conn. App. 439, 449, 473 A.2d 318 (1984). In my view, we should pursue that balancing process, in the common law tradition, on a case-by-case basis, in order to identify the relevant factors that tip the scales one way or the other. It seems to me entirely plausible, for example, that an equitable defense to default on a lease that sought a far-reaching accounting of complex partnership or intercorporate relations would not lend itself to resolution by summary process.

The facts of this case, however, present a compelling case for equitable intervention on the ground of forfeiture. In light of the tenant's substantial investment in the leasehold, it was plain error for the trial court to have rendered judgment awarding possession to this landlord for the tenant's default of a mere $25.01. Since the tenant's breach was not willful, but was premised on a good faith dispute, forfeiture of her interest would be wholly disproportionate to the gravity of her default. I therefore agree with parts IV, V and VI of the majority opinion.

Accordingly, I respectfully concur that the judgment of the trial court must be set aside and the case remanded to determine what arrearages the tenant presently owes the landlord.