[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
Introduction and Factual Background
On or about August 26, 1988, the plaintiff Housing Authority of the Town of East Hartford (hereinafter, "the Authority") served a Notice to Quit on the defendant, Nancy Melanson to vacate the premises at 51 Mill Road, East Hartford, Connecticut for failure to pay rent for August 1988. The rent was based upon an automatically renewing month to month lease agreement between the parties dated January 21, 1987. The initial rental amount was $112.00 per month and subject to redetermination as this lease is governed by federal as well as state law. The defendant filed an Answer, pro se, admitting the allegations but maintaining that the rent was being withheld due to housing code violations. The defendant further alleged that the action was brought in retaliation for her contacting both the landlord and public officials about these violations. General Statutes 47a-23. After several continuances, a motion for use and occupancy was filed by the plaintiff on March 3, 1989 for payments at a rate of $121.00 per month. The motion was granted on March 27, 1989. On or about March 14, 1989, the defendant retained counsel who filed his appearance and on April 11, 1989, a Stipulated Judgment entered, Susco, J., presumably resolving this case. The salient points of the stipulation included a stay through June 11, 1989 with use and occupancy of $121.00 per month, an acknowledgment of an arrearage of $1391.00 and the ability to pay the arrearage with "50% down with the balance being paid in 3 equal monthly installments; defendant to pay plaintiff's costs. If defendant elects to this sub stipulation and complies with its terms, she shall be reinstated as a tenant in good standing. Defendant to continue to pay above stated use and occupancy during any period of this sub-stipulation. This shall be a final stay."
On June 19, 1989, the defendant without her attorney, moved to reopen the judgment on the grounds that, inter alia, she was not in court when the agreement was made and approved and that "all pertinent matter had not been submitted." Her motion to reopen was denied on July 7, 1989, Susco, J., without opinion. On July 19, 1989, her attorney filed a writ of audita querela together with an application for a temporary restraining order seeking to stay an eviction scheduled imminently as a result of the June 11, 1989 final stay date. CT Page 3229 The grounds included, inter alia, the representation by the attorney in his affidavit that:
 4. In entering said stipulation, it was represented to the undersigned that the defendant could and would be able to procure alternative housing through the Rockville, Connecticut Housing Authority if she were to make timely application;
 5. On information and belief, the defendant presented herself at the Rockville Authority to make application for housing on either April 12, 1989 or April 13, 1989;
 6. Defendant's application for housing was, on information and belief, either not accepted, or denied by the Rockville Housing Authority;
 7. The lack of represented housing in Rockville constitutes a material change in circumstances surrounding the stipulation agreed to on April 11, 1989. Without the representation of said housing, the undersigned would not have entered into said stipulation;
The plaintiff opposed said relief and on August 14, 1989, the court, Susco J., granted the relief extending the stay through February 14, 1990 on the condition the use and occupancy was paid. Judge Susco also granted the attorney's motion to withdraw. An appeal was filed on August 18, 1989. As the defendant did not defend the appeal, on January 4, 1990 the trial court was ordered to set aside the writ of audita querela. The writ was set aside on March 8, 1990 and on March 15, 1990, new counsel, the Legal Aid Society, filed a new application for a temporary restraining order and further relief in the nature of a writ of audita querela. That request was based, in part, on the representations that:
10. The defendant is currently in poor health.
 11. The defendant suffers from the following serious medical problems:
 a. The defendant suffers from agoraphobia and cannot leave her home without the supervision of another adult;
 b. The defendant suffers from a serious thyroid problem and is under the care of a doctor. As a result of this problem, she suffers from CT Page 3230 chronic exhaustion, weight loss, loss of stamina and depression.
 c. The defendant has a serious back injury from a recent automobile accident. As a result, she is unable to lift boxes or furniture.
On March 26, 1990, after a hearing, the extraordinary relief was granted a second time with a stay through June 30, 1990 with an order to make use and occupancy payments. On March 30, 1990, the plaintiff appealed again. While the appeal was proceeding the plaintiff sought relief from the automatic stay provision to allow it to evict the defendant. That request was denied on August 21, 1990.
On December 4, 1990, the Appellate Court dismissed the appeal as moot. Ms. Melanson filed an objection to execution renewing her initial complaint that she was not allowed to submit her evidence, alleging a conflict with her new lawyer and finally, that the plaintiff was violating "FHAA" (sic) laws. A hearing was set on the objection and on a request by the Legal Aid Society to withdraw as counsel. This court granted the request to withdraw and continued the matter for briefs.
On January 24, 1991, this court heard testimony on the objection to execution. Ms. Melanson reiterated her objections to the underlying judgment on several grounds. First and foremost, she indicated that her first attorney had no authority to enter into the agreement. She introduced a letter dated July 14, 1989 in which the attorney acknowledged her belief that she was left out of the stipulation process and that she did not consent to the agreement. (Defendant's Exhibit 1). Second, she indicated that the arrearage was incorrect. Third, she indicated she was offered a position by the plaintiff and thus became a block representative after service of the Notice to Quit. Fourth, she stated that she had made all of the use and occupancy payments. Her testimony also indicated that she could not have met the terms of the repayment provision of the agreement since she was receiving $684.00 monthly and the repayment called for a payment of 50 per cent of $1391.00 or $685.00 together with a use and occupancy of $121.00. She introduced a March 15, 1989 letter from her attorney substantiating her testimony concerning terms for repayment. (Defendant's Exhibit 2)
On February 15, 1991, the court heard final argument on all issues.
II. CT Page 3231
Discussion
 A.
The thrust of the pro se defendant's argument is that the original judgment was entered improperly or, at the very least, by mistake. Ms. Melanson's position at each of the court dates was clearly twofold: (a) she never authorized her first attorney to enter into the terms of the stipulation and (b) she wanted the opportunity to present her case. The court must first address the issuing of setting aside the original judgment. General Statutes 52-212a states:
 Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court.
Practice Book 326 is identical to this section. The instant motion, if treated as a motion to set aside the judgment, was clearly not filed within four months. Nevertheless, as stated by our Supreme Court in Celanese Fiber v. Pic Yarns, Inc.,184 Conn. 461, 466 (1981):
 "It is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened [after the four month limitation] . . . if it is shown that the stipulation, and hence, the judgment, was obtained by fraud, in the actual absence of consent, or because of mutual mistake. See Sparaco v. Tenney, 175 Conn. 436, 437-38, 399 A.2d 1261
[1978]; Bryan v. Reynolds, 143 Conn. 456, 460-61, 123 A.2d 192 [1956] . . . ." Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837 (1980).
Ms. Melanson has never suggested that the judgment was entered by fraud but she has steadfastly maintained that it was entered without her consent. A stipulated judgment has been defined "as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement. . . CT Page 3232 and that, upon this agreement, the court has entered judgment. . . . It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside. . . unless it is shown the stipulation was obtained by fraud accident or mistake." Bryan v. Reynolds, 143 Conn. 456, 460-461 (1956). The record herein provides a clear and continuous grievance by Ms. Melanson that her first attorney had no authority to enter into the stipulation.
Additionally, this court is concerned with the so called sub-stipulation, the reinstatement clause. First, the total payment is not set forth since the amount to be paid includes not only the stated arrearage but also "plaintiff's costs." This court would have to speculate as to the meaning of that phrase.
Second, the repayment plan is also indefinite. There is no stated time for repayment. Inasmuch as the defendant has continued to pay use and occupancy as set forth in the stipulation could she not also reinstate her tenancy now by compliance with these terms? The answer, according to Ms. Melanson's testimony, is that she was then and is now financially incapable of repayment at these terms and never authorized her attorney to agree to those terms.
 B.
The plaintiff has argued that treating the defendant's objection to execution as a motion to set aside the stipulated judgment would result in this court violating the principle of res judicata which is based on the public policy that "a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 364 (1986). While Ms. Melanson was not present for the April 1989 stipulation, she did appear at the argument on June 27, 1989. While this court is not necessarily bound to follow rulings or decisions of another judge at an earlier stage of the proceedings, Santero v. Kleinberger, 115 Conn. 631, 638 (1932), this rule applies only when the prior decision was interlocutory in nature. Ratner v. Willametz, 9 Conn. App. 565, 573 (1987). The denial of the motion to reopen judgment is not interlocutory but rather final, State v. Fahey, 146 Conn. 55, 59 (1957), and conclusive and given res judicata effect. Ratner, supra. Thus this court cannot reverse the prior decision denying the motion to reopen.
This court then returns to Ms. Melanson's plea to not be evicted from her home. Ms. Melanson, as previously indicated, is a tenant in public housing. There is no question that she CT Page 3233 has limited financial means. Her present housing results from the policy of the federal and state governments to assist in providing decent, safe and sanitary dwellings for low income families. 42 U.S.C. § 1437; General Statutes 8-38, 8-69; 8-112a. Indeed, the "very premise of the program is that the rents will be substantially lower than those obtainable in the private market." Thompson v. Washington, 497 F.2d 626, 633 (1973).
Ms. Melanson's complaint, in part, focused on her inability to comply with the reinstatement terms. At the same time, she offered to repay the landlord at a rate of $85.00 per month. This court notes that this case is analogous to thousands of others heard by the Housing Session in which tenants — especially those in public housing — are given the ability to reinstate a tenancy by the repayment of an arrearage at reasonable and appropriate payment terms. There is no indication that she ever had the opportunity to do this. Her account could have been made current long ago had this occurred.
This court believes that modification of the reinstatement clause would serve all parties herein. "Equity abhors. . . a forfeiture." Fellows v. Martin, 217 Conn. 57, 65
(1991) citing Menzies v. Fisher, 165 Conn. 338, 357 (1973). It is well settled that equity will relieve against the forfeiture of a lease for nonpayment of rent. Fellows, supra. In that case, the court noted that:
 The factors considered. . . in deciding whether to grant equitable relief in nonpayment cases are those suggested by Justice Story in his learned treatise, namely (1) whether, in the absence of equitable relief, one party will suffer a loss "wholly disproportionate to the injury to the other party" (emphasis added) 3 J. Story, supra, 1728; and (2) whether the injury to the other party is reparable. See 3 J. Story, supra; see also Petterson v. Weinstock, 106 Conn. 436, 443-44, 138 A. 433 (1927).
Fellows, supra, 66. See also, Nicoli v. Frouge Corp.,171 Conn. 245, 247 (1976).
The defendant's objection is obviously in the nature of a writ of audita querela — a post judgment motion designed to postpone or prevent the enforcement of the execution on the judgment for equitable considerations. Norman Associates v. Anita Vann, SPH 8302-17843, Aronson, J. (August 4, 1983) (H-437); 2 Stephenson, Conn. Civ. Proc. Sec. 209 (2d Ed.). See CT Page 3234 also, Westfarms Associates v. Kathy-John's Inc., SPH 8308-20390, Goldstein J., (March 17, 1986) (H-733). As noted by Judge Aronson in Norman Assoc., supra," from a literal reading of the stipulation, the plaintiff is well within its legal right to seek an execution on the judgment." The present matter, however, is equitable and the issue becomes, inter alia, not comparative inconvenience but comparative hardship. Westfarms Associates, supra. When this case is examined in light of the tenant's hardship, her inability to meet a reinstatement plan which exceeded her income, her ability to meet a reasonable repayment plan (and clearly not unreasonable in light of other repayment plans for similarity situated public housing tenants), the landlord's indication of her valued tenancy evidenced by both the initial offer of reinstatement, albeit at terms beyond her means, and by offering her a position of some stature at the facility, equity requires, through the writ of audita querela, that relief be granted. Professor Stephenson noted that the writ could be used to postpone or prevent the enforcement of the execution. It has already been used in this case to postpone the execution. This court now for a third time grants the relief by allowing the tenant to reinstate through the continuing monthly payment of use and occupancy together with a monthly payment of $85.00 on the arrearage. Costs and reasonable attorney's fees for the initial proceeding through April 11, 1989 will also be allowed after hearing and approval by this court. Finally, the court believes, based upon the testimony of Ms. Melanson, that the unit should be inspected by the East Hartford Housing Code officials to determine the habitability of the unit. Payments of use and occupancy are obviously related to the condition of a dwelling unit.
 III.
Conclusion
For the above reasons, the defendant's Objection to Execution, which is in the nature of a writ of audita querela, is granted.
Berger, J.