[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action of summary process was brought by the plaintiff Oakland Heights against the defendant James Simon pursuant to the provisions of Connecticut General Statutes21-80(b)(1)(A) claiming possession of premises known as 136 Hunters Road, Lot 41, for nonpayment of rent. The plaintiff was represented by counsel. The defendant appeared pro se. The writ was dated February 9, 1993, with a return date of February 25, 1993, and filed with the clerk of the court on February 16, 1993. Abode service was made on the defendant according to the returns of the deputy sheriff. The complaint claims failure to pay the rent due for December 1992, but does not set forth the amount thereof. The arrearage claimed, however, is shown on the Notice to Quit (Plaintiff's Exhibit A). The return of service by the sheriff indicates abode service made as to the Notice to Quit on December 31, 1992, as to this defendant at the above-noted address as appears in the file of the clerk. The sheriff's return as to the writ summons and complaint was filed with the clerk on February 16, 1993 and was dated February 9, 1993 as noted above. Thereafter, plaintiff moved for judgment for failure of the defendant to appear. The same was granted by the court on March 11, 1993, and subsequently for good cause shown a motion to reopen the judgment was granted by the court on March 24, 1993. The defendant filed an answer and special defense dated March 11, 1993, having been in the clerk's office during the call of the calendar on that date. The answer essentially admitted all of the allegations of the plaintiff's complaint. The plaintiff, with counsel, and the defendant appeared before the court on April 13, 1993 at which time a trial to the court was conducted and testimony taken.
At the time of trial, plaintiff's counsel asked the court to judicially notice a prior action by the same parties involving summary process, Docket No. CV21-4781. In CT Page 4431 accordance with counsel's request, the court has carefully reviewed that file. That action was eventually resolved in defendant's favor. In addition to judicially noticing the file just noted above, the court, on its own motion, takes notice of another action of summary process seeking possession of the same subject premises by the same parties presently pending in this court, Docket No. CV21-5778, returnable March 16, 1993, and making a claim of possession for the subject premises Lot 41 due to material noncompliance with the Oakland Mobile Park rules and regulations. This file contains a return by the sheriff indicating service on March 5, 1993 (abode service). This file contains no notice to quit. In the summary process action heard by the court on April 13, the alleged delinquent rent was $220, and testimony to that effect by the witness Saltojanes supported that claim. The plaintiff is an owner within the meaning of Connecticut General Statutes 21-80, and the defendant is a resident within the meaning of that statute.
At the time that service was made by the sheriff, as to both writs CV21-5750 and CV21-5778, the defendant was absent from his premises, and upon his return, his testimony was to the effect that the writs and notices as to both actions were affixed to an outer portion of the premises in a wet, soggy and frozen condition as the result of a snowstorm. The defendant testified that he dried out the papers and endeavored to comply with the Notice to Quit based on alleged violation of the rules and regulations of the mobile park by causing the removal of an unregistered Oldsmobile motor vehicle on the premises. See Plaintiff's Exhibit B. Thereafter, the defendant sent a number of checks to the plaintiff endeavoring to cure the claimed rent arrearage. Several of the checks were held by the plaintiff, but at least one was negotiated. The checks or copies thereof, plaintiff's Exhibits D, E, F and G, would seem to cure any arrearage and have the defendant current through April of 1993, insofar as the face amounts thereof are concerned although admittedly marked for use and occupancy. The defendant has been a resident of the trailer park and an owner for 12 years. The defendant, as earlier indicated, appearing pro se and being unlettered in the law, while admitting the allegations of the complaint invokes the equitable power of the court in this matter if not in the pleadings in his testimony. CT Page 4432
It appears, reference being made to Defendant's Exhibit 3 that the plaintiff has been and is currently endeavoring to pass on to the defendant the plaintiff's attorney's fees incurred by the plaintiff with regard to this and/or prior matters. In examining Docket No. CV21-4781, this court could find no bill of costs nor allowance by the court as to attorney's fees. It would appear therefore on the basis of the files that the court has examined and the testimony elicited at the hearing that the plaintiff initiated first an action of summary process seeking possession on the basis of nonpayment of rent, and then within a few days thereafter, another action of summary process seeking possession for a claimed violation of the rules of the trailer park. It would appear from the files that the sheriff served both notices and writs in close proximity timewise while the defendant was away during a time of inclement weather, that upon his return, the defendant endeavored to dry out and sort out the papers, felt he had complied by virtue of the removal of the auto on Lot 41 and thereafter endeavored to get current with his rental payments, the checks for which are exhibits in the file.
The confusion of the defendant as a pro se litigant is understandable based on the plaintiff's double-barreled approach and the confusion can be laid squarely at the door of the plaintiff by filing the second writ seeking possession while the first was still pending and unresolved. In addition, as to the receipt of the checks by the plaintiff, even though marked "use and occupancy", the testimony of the plaintiff's witness was that at least one check was processed not as use and occupancy but "to see if there was any money in the bank."
The defendant, at least by way of his testimony at the time of trial, invokes equitable relief from the court. And on the basis of Fellows v. Martin, 217 Conn. 57, the court is clearly entitled to consider that issue. Applying equitable considerations to the facts in this proceeding, would the granting of eviction of the resident tenant mobile home owner work a forfeiture wholly disproportionate to the injury suffered by the plaintiff. The defendant testified as to the initial cost of trying to move the mobile home and its present deteriorated physical condition. In formulating Connecticut General Statutes 21-80, the legislature endeavored to accord defendants, such as James Simon, greater CT Page 4433 protection than provided tenants in other housing facilities. The reason for the additional protection to mobile manufactured home residents is that they own their unit and that this ownership represents a substantial investment for the resident. When the resident is evicted, he is faced with many choices none of which may be palatable to him. Upon eviction, the removal of the unit subjects the unit to severe devaluation. Due to widespread zoning restrictions against mobile manufactured home parks, there are few, if any, places to relocate the dispossessed unit. The resident owner could sell the unit to the park owner at a distressed price or try to locate a non-existent lot in another mobile home park.
The court also observes that the effort by the plaintiff to pass on the plaintiff's legal fees and costs to the defendant without in any way asking for the court's approval is not to be encouraged. Our summary process laws cannot be used as an anvil upon which to hammer out legal fees. Quoting from the court, Spada, J., in Hartford East Apartments v. Raum, Docket No. H-7903-00912 E.H.
Defendant's Exhibit 3, an invoice to the defendant dated February 24, 1993, claimed a total amount due plaintiff of $1,757.43.
Of this amount, $275 is labeled attorney's fees re: rules violations. The exhibit shows an unallocated partial payment by the defendant by check of $225.10.
Plaintiff acknowledged at trial that all that was due was $220 thus at least raising the implication that the defendant has been paying attorney's fees passed along to him by plaintiff. Equity would seem to suggest that any attorney's fees paid by defendant wittingly or unwittingly should rebound to defendant's benefit as concerns any claim of delinquent rent. Part of Defendant's Exhibit 3 includes a billing breakdown statement from plaintiff's counsel to plaintiff so there can be little doubt that these fees were being passed along to defendant. Part of Plaintiff's Exhibit 3 contains a note from defendant to plaintiff as follows: "I have removed the vehicle and this represents my efforts to get paid up on rent. Please accept my apologies and send me the bill for reasonable legal-sheriff fees."
Admittedly, the defendant may be cast in the role CT Page 4434 of a volunteer as to these charges but this is no reason why such fees and costs should not be submitted to the court for approval or at least review particularly in the case of a well-intentioned pro se litigant unlettered in procedure.
Rhetorically, the court asks itself how in good conscience the plaintiff can claim rent unpaid while being the beneficiary of the defendant's unsophisticated largesse of attorney's fees. In addition, the plaintiff tacks on late charges with impunity at 5 percent.
The clerk of the court is directed to turn over the rent checks contained in the file as exhibits forthwith to the plaintiff's counsel.
Insofar as this action of summary process seeking possession of defendant's subject premises is concerned, judgment may enter in favor of the defendant.
Austin, J.