[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Suburban Greater Hartford Realty Management Corporation, managing agent for Squire Village Associates Limited Partnership, owner of Squire Village Apartments in Manchester, Connecticut, has brought this summary process action seeking to evict the defendant tenant, Hattie Rose, from her apartment. The complaint alleges that she failed to pay her rent for the months of September through December, 2000 and while denying nonpayment for September and October in her pro se answer, she has admitted these allegations in her amended answer.
The sole issue for determination by this court is whether the defendant should prevail on her special defense of the equitable doctrine against forfeiture as set forth in Fellows v. Martin, 217 Conn. 57, 584 A.2d 458
(1991). In that case, our Supreme Court noted that "[e]quity abhors . . . a forfeiture" and that "[i]t is well settled that equity will relieve against the forfeiture of a lease for nonpayment of rent." (Internal quotation marks omitted.) Id., 65. The court adopted the traditionally utilized two part test "suggested by Justice Story in his learned treatise, namely, (1) whether, in the absence of equitable relief, one party will suffer a loss "wholly disproportionate to the injury party' . . . 3 J. Story, [Equity Jurisprudence (14th Ed.)] § 1728; and (2) whether the injury to the other party is reparable." (Emphasis omitted.) Id., 66. CT Page 4670
The evidence indicates that the defendant is a single mother with three children who has been living in this federally rent assisted apartment for almost three years. The defendant first testified that Mr. Harvey, the father of her children, showed her a receipt for November's rent and thus she believed that her November rent had been paid. Moreover, as a result of a domestic dispute occurring on December 12, 2000, involving Mr. Harvey, both she and Mr. Harvey were arrested. She stated that she had been unable to pay the December rent due to her inability to pay her bond and gain her release from incarceration. Additionally, she lost her employment during that period. Finally, as a result of the arrest, her children were placed in the temporary custody with the Department of Children and Families (DCF) and have most recently have been living with her sister. The defendant is now pregnant and expected to deliver her fourth child this month.
The testimony further indicated that the DCF will not return her children to her unless she has a habitable apartment such as the one which is the subject of this dispute. Moreover, not only is the apartment in walking distance to the children's schools,[1] but, more importantly, the apartment is affordable because of the federal subsidy which runs with the unit. The tenant's portion of rent at the time of the termination was $111. At the time of trial, the defendant had no employment although she had job applications pending and the children's grandmother had offered to pay the rent. This is the defendant's first apartment and she has never been evicted. She is unable to afford market rent apartments and the DCF has offered, in writing, to pay any arrearage as well as three months future rent if she can remain in this apartment.
Notwithstanding the allegations of the complaint which state that rent had not been paid for the months of September and October, the plaintiff's property manager, Mr. Lopez, acknowledged that payments were made those months.[2] Indeed, exhibit two, the rental record, reflects payments for those periods. At trial, Mr. Lopez claimed that no rent had been paid during August, 2000, which is reflected in exhibit two, but is contradicted by his testimony that payments are credited to outstanding balances first. The record indicates that September and October payments were credited to those respective months. It must be noted that the rental record reflects a number of transactions for June and July on which this court received no testimony but which not only show payments made in August, but also a number of varying and unexplained charges for rent. July, for instance, has a monthly rental charge of $236 as of July 1, 2000, but is then adjusted on July 28 by $125.00. August commences with a September 12, 2000 transaction for a miscellaneous repair charge of $80.00. The exhibit certainly leaves this court with questions.[3]
Returning to the two part test discussed in Fellows, it is clear from CT Page 4671 the testimony that the defendant will suffer a loss that is surely disproportionate to that suffered by the managing agent. At a time when she is about to give birth to a new baby and a suitable home is required for her children, the loss of her home for the last few years is far greater than the loss to the plaintiff. Her loss is surely exacerbated since the unit is subsidized by the United States Department of Housing and Urban Development and the plaintiff does not have the financial means to afford a market rate rental.
The evidence on the second part of the Fellows test, whether the injury to the plaintiff is reparable (and which, of course, is related to the first test), also weighs in favor of the defendant. The case was commenced based only on the allegation of nonpayment of rent and, notwithstanding the conflict between the allegations of the complaint and the proof for the months of September and October, the State of Connecticut has guaranteed payment not only for any arrearage but for three future months. The plaintiff's loss, or rather that of its principle, is made immediately whole and then some through this arrangement. The loss is reparable.
If the equitable doctrine against forfeiture means anything and, as noted in Fellows v. Martin, supra, 217 Conn. 65, "if the payment may be secured without a forfeiture, equity will not permit a forfeiture," then the defendant has proved her special defense and judgment must enter in her favor.
Berger, J.