[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff instituted this declaratory judgment action, which was tried to the court on the Complex Civil Litigation Docket. It concerns a lease for the operation of a high speed ferry service between Stamford, Connecticut and New York City. The court makes the following findings of facts and conclusions of law.
The plaintiff, The Connecticut Light and Power Company, as landlord and the defendant Lighthouse Landings, Inc. as tenant entered into a written lease effective November 30, 1999. Exhibit 19. At issue is the interpretation of Article 6 of the lease. That article contains the rights of the respective parties to terminate the lease in the event certain permits for a high speed ferry service were not obtained.
The court finds that the lease was entered into by sophisticated parties, represented by competent counsel regarding the commercial interests of both parties each with relatively equal bargaining power. This court concludes that in Article 6 "the parties meant what they said and said what they meant in language sufficiently definitive to obviate any need for deference to the trial court's factual findings as to the parties' intent." Tallmadge Bros. Inc. v. Iroquois Co. TransmissionSystem, L.P., 252 Conn. 479, 497-98 (2000).
Article 6 is titled "Approvals" and does not contain a pure contingency clause. It does give either party the right to terminate if permits are not obtained but each party has different termination rights. It requires that the "Tenant shall diligently proceed to obtain all governmental permits, approvals, licenses and/or certificates required in connection with Tenant's use of the Premises."
Article 6 states:
 "If Tenant has not obtained all such Permits within one hundred eighty (180) days after the date of this CT Page 11008 Lease, then Tenant shall have the right to either (i) terminate this Lease or (ii) extend the contingency for another sixty (60) days by notice by given Landlord within ten (10) days after the expiration of said one hundred eighty (180) day period; if Tenant exercises its right to extend the contingency period for an additional sixty (60) days, and if Tenant has not obtained all such Permits within the additional sixty (60) days, then Landlord and Tenant shall each have the right to terminate the lease by notice given to the other party within ten (10) days after the expiration of said sixty (60) day period. In the event that either party elects to terminate this Lease in accordance with this Paragraph 6, the Lease shall terminate as of the date of such notice of termination and thereafter neither party shall have any obligations or liability hereunder except those which rose prior to the termination date. Landlord agrees to cooperate with Tenant in connection with the Permits; Tenant agrees to reimburse Landlord for its out of pocket costs incurred at Tenant's request in connection with obtaining the Permits."
The 180 day period commenced on November 30, 1999. Exhibit 19. At the end of that 180 day period the Tenant alone would have had the right to either terminate the Lease or extend the contingency period for another 60 days by notice given to the Landlord. The Tenant did exercise its right to extend its contingency period for an additional 60 days.
The court finds that Article 6 of the Lease gives the Tenant alone the right to terminate the lease within and at the end of the 180 day period of time if the permits were not obtained. During that same 180 day period and at the end of the 180 days, the Landlord has no right to terminate the Lease, even if the Permits are not obtained. Article 6 is not a pure contingency clause. The court concludes that the Lease is not contingent on obtaining the governmental permits. The failure to obtain the Permits only gives either the Tenant and/or the Landlord, under certain circumstances, the right to cancel the Lease. Only when the Tenant requests an extension of an additional 60 days, do both the Tenant and the Landlord have the right to terminate the Lease. The Tenant on May 22, 2000 exercised the 60 day extension. Exhibit 13. The 180 day period from November 30, 1999 ended at the conclusion of business on May 29, 2000. The 60 day extension thereafter, ended at the conclusion of business on July 28, 2000. CT Page 11009
Even if the parties rounded off the phrases "180 days" to mean "six months" and "sixty days" to mean "two months," the 180 days would have commenced on December 1, 1999 and ended at the end of business on May 31, 2000 and the 60 days would have ended on July 31, 2000. The Tenant failed to obtain the Permits by July 31, 2000.
On August 3, 2000 CLP sent a notice of termination of the Lease. Exhibit 16. The notice was sent to the defendant by three mediums; (1) facsimile, (2) Federal Express overnight delivery and (3) certified mail return receipt requested. Exhibit 16 was sent to two addresses of the defendant: (1) that contained in the extension letter, Exhibit 13, and (2) that referred to in Article 22, the notice clause of the lease, Exhibit 19. This Court finds that the defendant received actual notice of Exhibit 13 on August 4, 2000. Actual notice having been given, the Court finds that the Lease termination notice, Exhibit 16, was in compliance with Article 6. This notice of termination was given within the "10 days after the expiration of said sixty (6) day period" as set forth in Article 6, whether the 10 days ended July 28, 2000 or July 31, 2000, or any day in between. The Court finds that the Lease terminated as of August 4, 2000 in accordance with Article 6.
The Court now turns to the relief requested. The plaintiffs Claims For Relief requests: "a declaratory judgment that the Lease was terminated and that it is of no further force and effect." The defendant has counterclaimed seeking in its Claims For Relief; "a declaratory judgment reinstating the Lease and all Defendant's rights and privileges thereunder." The defendant has also alleged six special defenses. The Court will only consider the counterclaim and the Fifth Special Defense, Equitable Non-Forfeiture. This Fifth Special Defense alleges:
 Assuming, arguendo, that the Plaintiff properly terminated the Lease, the Defendant is entitled to reinstatement of the Lease and relief from forfeiture as a result of one or more of the following:
 1. The Plaintiff is not entitled to the relief sought in its complaint for the reason that the Plaintiff comes before the court with unclean hands by wrongfully inducing the Defendant to grant the Plaintiff the right to terminate, and by wrongfully terminating the Lease after it had waived its right to do so.
 2. The Defendant's delay in the acquisition of all applicable permits within the time stated in the CT Page 11010 Lease was slight and reasonable.
 3. The Defendant's delay in the acquisition of all applicable permits within the time stated in the Lease caused no damage to the Plaintiff.
 4. The Plaintiff has prevented the Defendant from completing the permitting process and otherwise attempting to cure its failure to obtain all applicable permits.
 5. Given the unique nature, location and suitability of the subject premises as it relates to the operation of high speed ferry service from a transportation hub in Stamford, Connecticut, the termination of the Lease would result in irreparable harm and in such a hardship to the Defendant as to make it unconscionable to enforce literally the conditions of the Lease.
 6. In the absence of equitable relief, the Defendant will suffer a loss wholly disproportionate to the injury to the Plaintiff, and injury suffered by the Plaintiff is reparable.
 7. Should the court grant the equitable relief sought by the Defendant, the Defendant will make the Plaintiff whole by using its best efforts to complete the permitting process in a timely a manner as is reasonably possible in order to initiate the operation of ferry service as contemplated in the parties' Lease, and will otherwise continue to comply with the remaining terms of the Lease.
The defense of equitable non-forfeiture was first applied to leasehold issues in 1991. Fellows v. Martin, 217 Conn. 57 (1991). Fellows noted two elements to the doctrine: "(1) whether, in the absence of equitable relief, one party will suffer a loss wholly disproportionate to the injury to the other party. . . . and (2) whether the injury to the other party is reparable." Id. 66. "Equity abhors. . . . a forfeiture." Id. 65. The doctrine historically has not been limited to nonpayment of rent forfeitures. Pierce v. Staub, 78 Conn. 459, 466 (1906). "The determination of what equity requires in a particular case, the balancing of the equities is a matter for the discretion of the trial court." CT Page 11011Kakalik v. Bernardo, 184 Conn. 386, 395 (1981).
This court authored a decision intended to cover all the reported cases on equitable nonforfeiture as it applied to lease issues. HousingAuthority of Norwalk v. Whitaker, Superior Court, judicial district of Stamford/Norwalk, Housing Session at Norwalk, docket number SPNO 9410-16560 (September 7, 1995, Tierney, J.). Nine equitable factors were cited, each supported by a Connecticut cited authority.
This court has applied all of the nine equitable factors of Whitaker to the facts of this case. It has balanced the equities of the parties. The court finds that the forfeiture of the lease would destroy the defendant's contemplated high speed ferry operation at that site and substantially affect the defendants' large capital investment in that operation. The defendant is willing to pay the back rent. The plaintiff will not lose the benefit of its November 30, 1999 lease. After November 30, 1999 the plaintiff negotiated a more lucrative deal for the premises with the Strand/BRC Group, LLC. The plaintiff needed the Tenant's 60 day extension to gain the Landlord's right to terminate. The plaintiff did not act in good faith in dealing with the defendant in obtaining the 60 day extension. At no time prior to termination did the plaintiff inform the defendant of the Strand deal. The plaintiff has unclean hands.
The defendant has proven the seven allegations of its Fifth Special Defense. The issues of the Fifth Special Defense are found for the defendant. The balancing of the Whitaker equitable factors favor the defendant. The issues on the defendant's counterclaim are found for the defendant.
This court having found that the lease has been terminated refuses on equitable grounds to declare the lease "of no further force and effect" as requested in the plaintiff's Claims For Relief. The court having found the equitable issues for the defendant in its Fifth Special Defense grants relief from forfeiture of the lease. The court having found the issues for the defendant in its counterclaim hereby reinstates the November 30, 1999 lease.
The defendant shall have the obligation to pay to the plaintiff all rental monies due. The plaintiff shall have the obligation to permit access to the leased premises including execution of all documents and permits necessary for the defendant "to obtain all governmental permits, approvals, licenses and/or certificates required in connection with Tenant's use of the premises." The 180 day period and 60 day extension period as set forth in Article 6 having expired, that portion of Article 6 is void. CT Page 11012
This court will retain continuing jurisdiction over this litigation and all issues in regards to the lease, rent and permits.
The parties may request a further articulation of the factual and legal basis for this decision. Pandolphe's Auto Parts, Inc. v. Manchester,181 Conn. 217, 222, fn 5 (1980); Scherr v. Scherr, 183 Conn. 366, 368
(1981): P.B. 66-5
This court determines that this Memorandum of Decision is an appealable final judgment. P.B. 61-4 (a).
BY THE COURT
TIERNEY, J. CT Page 11013