[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In Fellows v. Martin, 217 Conn. 57 (1991) (Peters, C.J., concurring), the Supreme Court ruled that equitable defenses and counterclaims implicating the right to possession are available in summary process actions. The present case presents an issue left open in Fellows: whether equity will relieve a tenant's failure to pay rent when the non-payment, although not deliberate, is the result of the defendant not receiving anticipated monthly payroll, child support and state welfare payments for reasons which were largely but not entirely beyond the defendant's control. For the reasons set forth below the court concludes that under the facts of this case equity bars the termination of defendant's tenancy.
The basic facts are not disputed by the parties. Defendant is the mother of three young children who has resided since 1987 in an apartment leased to her by the plaintiff. The East Hartford Housing Authority is a governmental agency whose primary purpose is to provide affordable housing to low and moderate income persons. The monthly rent for defendant's two bedroom apartment is one hundred ninety dollars. Plaintiff is able to charge substantially below market rent for this and similar units because of low interest construction rates (2%) provided to it through the State Moderate Housing Program. As described in General Statutes 8-69 the Moderate Rental Housing Program was established in recognition of the "shortage . . . of moderate rental housing" and the belief "that state financial assistance in the form of low interest rates is needed to make housing accommodations available" for low and moderate income families.
The defendant's present monthly rent was established by the application of a formula which considers, inter alia, the number of children living with defendant and her annual income and medical and child care expenses. The CT Page 8736 defendant is employed by the Internal Revenue Service as a secretary. As a single mother she receives a state day care supplement of three hundred sixty nine dollars and is supposed to receive three hundred twenty dollars per month in court ordered child support payments. Because the father of her children is frequently delinquent in his child support payments the plaintiff deems that the defendant receives only half of the court ordered payments for the purpose of determining her rent.
In October, 1991, a combination of factors caused defendant to miss her monthly rental payment. On October 3, defendant learned that her direct deposit payroll check was not properly deposited to her account. When she called the bank to inquire about it, defendant learned that her checking account had been closed due to "mismanagement". Because it took approximately six weeks to redirect her checks, the defendant did not receive her October payroll checks until late November, 1991. In addition, through no fault of hers, defendant did not receive her court-ordered child support payment or state day care subsidy for October. In short defendant did not receive any of the monies that were assumed to be available when her rent was calculated by plaintiff.
Because October's rent was unpaid plaintiff initiated the present summary process action by serving defendant with a notice to quit the apartment by October 24, 1991. Thereafter a writ, summons and complaint dated November 8, 1991 was issued. On December 5, 1991, defendant tendered, and plaintiff rejected, a money order for five hundred seventy dollars which constituted payment of October, November and December's rent at the agreed amount of one hundred ninety dollars per month. Defendant's tender was rejected because of plaintiff's rent collection policy (RCP). The RCP had its origins in the mid-1980's when state and federal audits disclosed an unacceptably high rental delinquency rate and the absence of a uniform, consistent policy to address that problem. In response to state and federal recommendations plaintiff adopted a rent collection policy which has as its essential features the following:
 1. Any tenant who has received a notice to quit may cure the default by paying CT Page 8737 the late rent to the authority prior to the quit date.
 2. Once a complaint has been served, the tenant can pay any arrearage to plaintiff's counsel prior to the fifteenth day of the month following the non-payment.
 3. The Authority will enter into a stipulated judgment providing for reinstatement of the lease only once during a tenancy. If a subsequent summary process action is initiated, the Authority will not enter into a negotiated settlement that provides for the tenant's reinstatement.
Plaintiff refused defendant's tender and her request that she be reinstated because defendant had previously been reinstated in connection with a prior summary process action. Although the RCP calls for only one reinstatement, plaintiff's rental coordinator testified that in fact occasional exceptions are made if the executive director is persuaded that the tenant has an acceptable reason for requesting another reinstatement. According to the coordinator, each of the six requests made during the preceding twelve months was granted.[1]
In the face of defendant's refusal to accept plaintiff's tender, the matter proceeded to trial. It is undisputed that defendant did not pay October's rent, as alleged in the complaint, and that from time to time prior to this action, defendant has either been late with or not paid her monthly rent.[2] The principal dispute in this case is whether the defendant's special defense invoking the equitable discretion of the court should be sustained under the facts of this case in which a public housing authority seeks to evict a tenant whose failure to pay her monthly rent is attributable in large measure to forces beyond her control, but who herself bears some responsibility for the default and is ready, willing and able to make the Authority whole.
In Fellows v. Martin, supra, the Supreme Court CT Page 8738 affirmed that equitable defenses and counterclaims implicating the right to possession are available in a summary process action:
 Equity abhors . . . a forfeiture. It is well settled that equity will relieve against the forfeiture of a lease for non-payment of rent. This ancient principle allows relief because "[i]n reason, in conscience, in natural equity, there is no ground to say because a man has stipulated for a penalty in case of his omission to do a particular act (the real object of the parties being the performance of the act), that if he omits to do the act he shall suffer an enormous loss wholly disproportionate to the injury to the other party." The "penalty" is the forfeiture of the leasehold, imposed for "omission to do a particular act," that is, to pay rent; if the payment may be secured without a forfeiture, equity will not permit a forfeiture.
217 Conn. at 67. (Internal citations omitted).
While the rationale for permitting equitable defenses is easily stated; see Pomeroy's Equity Jurisprudence 453; ("A court of equity will relieve the lessee and set aside a forfeiture incurred by his breach . . . based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money."); application of the defense in particular cases is more difficult. Prior to Fellows v. Martin, supra, Connecticut courts utilized a three part test in evaluating a claim for equitable relief: (1) whether the delay in performance is slight; (2) whether the loss to the lessor is small; and (3) whether the failure to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce. F. B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47 (1922); RR of Connecticut, Inc. v. Stiegler, 4 Conn. App. 240 (1985).[3]
In Fellows, however, the Court articulated a two part test for assessing claims for equitable relief: (1) whether, in the absence of equitable relief, one party will suffer a loss wholly disproportionate to the other party; and (2) whether CT Page 8739 the injury to the other party is reparable. A review of the cases suggests that under either formulation there are in fact four factors that the courts consider and weigh in considering claims for equitable relief in summary process actions. The first factor, as stated in Fellows, is whether the loss to be suffered by the tenant, if evicted, is disproportionate to the loss to the landlord if the tenant is not evicted. This requires, therefore, that the hardship to each party be identified and that one be balanced against the other. Only if the balance of hardships tips decidedly in favor of the tenant should equitable relief be considered.
The second factor is whether the injury to the other party is reparable. The Fellows court noted that this involves consideration of whether "the landlord's injury can be remedied by money instead of forfeiture of the tenancy." Id. at 69.
The third factor, not always analytically distinct from the others, is the reason for the nonpayment and the extent to which the tenant is "culpable." Often expressed as the "clean hands doctrine", this factor evaluates whether the tenant's breach was wilful or grossly negligent, on the one hand, or the product of mere neglect, on the other. Thompson v. Coe, 96 Conn. 655 (1921). Thus, for example, where the non-payment is the result of the theft of the check or its loss in the mail equity will prevent a forfeiture. Id. Where, however, the non-payment is ongoing or continues in the face of repeated requests for payment, equity will not intervene. Haddad v. Francis, 40 Conn. Sup. 567 (1986). The question of the tenant's culpability may not, however, as suggested in Fellows, be applicable in the case of non-payment. "Equity will relieve against the forfeiture of a lease for non-payment of rent even where the tenant's breach is wilful." Fellows v. Martin, supra, at 67, citing H. Underhill, A Treatise on the Law of Landlord and Tenant, 411; but see Mobilia v. Santos, 4 Conn. App. 439 (1984) ("Deliberate failure on the part of the defendant to tender agreed monthly rent would not appear to allow the trigger of equitable relief").
Finally, the fourth factor identified by the courts is the extent to which the tenant has demonstrated good faith in curing the default. "[T]he conduct of the plaintiff after he was informed of the non-payment is conclusive of the good CT Page 8740 faith of the plaintiff . . . and his desire to avoid a forfeiture. Thompson v. Coe, supra, at 659. See, also, Danpar Associates v. Falkha, 37 Conn. Sup. 820 (1981) and Syncro Flame Burner Corp. v. Windham Development Corp.,11 Conn. Sup. 28 (1942) (Rent promptly paid after notification of default).
Applying these considerations to the facts of this case, it is my conclusion that equitable relief is appropriate.
 A.
In the Absence of Equitable Relief the Defendant Will Suffer a Loss Wholly Disproportionate to the Landlord
In this case the interests of both parties are clear. For the defendant, eviction means that she and her three young children will suffer the loss of an apartment whose rental rate of one hundred ninety dollars per month is substantially below market level. The apartment is undoubtedly a precious commodity as defendant remained patiently on the waiting list for three years until this unit became available. Additionally, the lease, executed in 1987, renews itself each month such that she effectively has a perpetual lease, subject to her remaining eligible for subsidized housing. Because the plaintiff is the recipient of substantial state assistance in the form of subsidized loans and is also subject to significant state regulatory supervision[4], case law suggests that plaintiff cannot be evicted except for "good cause", that is, for reasons other than lapse of time. Lopez v. Henry Phipps Plaza South,498 F.2d 937, 943 (2nd Cir. 1974); Joy v. Daniels, 479 F.2d 1236,1241 (Cir. 1973). "([T]he normal practice in subsidized housing . . . is to permit tenants to remain beyond the expiration of their lease unless a reason has arisen for their eviction; termination is thus the exception and not the rule.") (internal cites omitted). Defendant has what amounts to a perpetual lease with a reasonable expectation of continued occupancy for an indefinite period of time. Eviction in this case, therefore, involves more than the forfeiture of a conventional month to month tenancy; it involves the loss of a tenancy whose duration is indefinite, even lifelong, as long as the defendant remains otherwise eligible. In this respect the potential loss to the defendant is akin to the CT Page 8741 forfeiture faced by the tenant in Fellows v. Martin, in which a ninety nine year lease was terminated.
The plaintiff's interest is in maintaining the integrity of its rent collection policy and insuring that it fulfills its financial obligations. As previously described, the plaintiff's rent collection policy sets forth the rules governing the curing of defaults and reinstatement of the leases of tenants who have breached their lease because of non-payment. Plaintiff claims that equitable intervention in this case will undermine that policy. With respect to its financial obligations, plaintiff raises the specter that it may default on its bond obligations and become subject to a "takeover" by the Department of Housing and Urban Development.
While plaintiff's concerns are not insignificant, the loss suffered by the defendant, if she is evicted, will be disproportionate to the injury that the authority may suffer if she is not evicted. First, the plaintiff's concerns, under the facts of this case, although understandable, are speculative. Plaintiff's rent collection policy is not implicated by this decision.[5] The Authority still retains its ability to pursue it evictions in accordance with that policy. Second, plaintiff has not presented any evidence suggesting that it will default on its bonds or that its financial obligations will otherwise be jeopardized. In fact, plaintiff's own witness indicated that exceptions to the rent collection policy are granted so that tenants, facing problems like defendant, are given more opportunities to cure defaults than is permitted by the RCP.[6] Because the Authority itself occasionally deviates from its own policy, the court is not persuaded that its decision in this case will adversely affect the legitimacy of that policy or undermine in any respect the Authority's financial obligations.
With respect to the general concern that the decision in this case may incite a flurry of equitable claims by tenants who find themselves in similar circumstances as defendant, a number of observations are appropriate. The first is that by its very nature, equitable defenses are fact specific, such that each claim will necessarily have to be resolved on a case by case basis. The second is that it is significant in this case that the tenant is ready and willing CT Page 8742 to repair the breach by promptly tendering all of the existing arrearage. This is in contrast to the vast majority of cases in which repayment, if it occurs at all, is over an extended period of time. Finally, this is a case in which defendant's arrearage was not substantial and in which there is good reason to believe that once the defendant again begins receiving her monthly income the defaults will not be a recurring problem. Finally, because of extensive state involvement in its program and its special mandate to provide low and moderate income housing, the plaintiff stands in a different relationship to its tenants than does a private landlord. Finally, the plaintiff, much to its credit, has from time to time declined to rigidly and mechanically enforce its own policies when to do so would be inequitable. For these reasons the court believes that principled distinctions can be made amongst the varied cases in which equitable defenses may be raised.
 B.
THE INJURY TO THE PLAINTIFF IS REPARABLE
"[T]he equitable doctrine against forfeitures presupposes that the landlord's injury is reparable — that is, the landlord's injury can be remedied by money instead of forfeiture of the tenancy." Fellows v. Martin, supra, at 69. Although the Authority has disavowed "squaring its books" as being of major concern to it; see, plaintiff's brief at 9; the measure of whether equitable relief should be granted is, in part, whether the breach is in fact reparable by money since, as previously noted, in a summary process action, the "penalty" for nonpayment is forfeiture of the leasehold. "[I]f the payment may be secured without a forfeiture, equity will not permit a forfeiture." Id. at 65. In this case defendant is holding in escrow all the funds necessary to make plaintiff whole. Those funds were promptly tendered to plaintiff shortly after this action was commenced and promptly upon defendant's receipt of the funds necessary to cure the breach. This is not a case then in which the breach would be cured by payment of the arrearage over an extended period of time. The funds are presently available, and indeed were offered to plaintiff, but rejected. By this court's order plaintiff will be made whole immediately for any arrearage presently due and owing. CT Page 8743
 C.
THE REASON FOR THE NON-PAYMENT AND THE DEFENDANT'S RESPONSIBILITY
Of the four factors to be considered, this is perhaps the most murky, both because the law is uncertain as to whether the tenant's culpability is even relevant in a non-payment case, and because, assuming its relevance, the defendant in this case bears some, but not all of the responsibility for it.
"A court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief; thus a tenant whose breach is `wilful or grossly negligent' will not be entitled to relief. Fellows v. Martin, supra, at 67. As the Fellows court noted, however, courts and commentators have recognized that "equity will relieve against the forfeiture of a lease for non-payment of rent even where the tenant's breach is wilful." Id. Consequently it is unclear whether the tenant's "fault" for nonpayment should be considered. Assuming its relevance, "the rule is not inflexible and in many cases relief may be granted although the mistake was not unmixed with some element of negligence, particularly where the other party has been in no way prejudiced." Fountain Co. v. Stein, supra. The evidence in this case discloses that the defendant was unable to pay her rent for October, 1991, for a variety of reasons. First, her checking account was closed due to "mismanagement", presumably attributable to excessive overdrafts or other similar type problems. Following its closing, two of her payroll checks which would have been directly deposited into the account were inaccessible to her despite her efforts to redirect the checks. For reasons unrelated to her, the defendant did not receive her monthly daycare supplement from the state or her court ordered child support payments. Consequently, during the month of October she did not receive any of her anticipated income.
While the closing of the checking account was apparently the result of defendant's "mismanagement" this is not a case in which the nonpayment was deliberate or in which there is a history of wilful and persistent non-payments. Fountain Co. v. Stein, supra. Nor is this a case in which the tenant "has violated fundamental principles of fair dealing." Pomeroy's Equity Jurisprudence 453. Instead the CT Page 8744 evidence in this case discloses that were it not for the unfortunate and unlikely coincidence of events in October which caused defendant not to receive any of her anticipated funds for that month this action may not have been filed. After listening to the evidence and observing the witnesses the court is satisfied that Ms. Parker is a hard working, concerned and dedicated mother who, like many, struggles from day to day to make ends meet and who, unlike the more fortunate, does not have a cushion to sustain the loss of a week's or a month's income or a child support check. Although the default was not "unmixed with some element of negligence", Id.; it was not principally the result of a deliberate refusal on her part to pay the rent. Fountain v. Stein, supra. Cf. Haddad v. Francis, supra, (defendant's failure to pay taxes was wilful in that he ignored the obligation for years despite repeated requests.)
 D.
THE DEFENDANT HAS SHOWN GOOD FAITH IN ITS DEALING WITH PLAINTIFF
The last factor to be considered is whether defendant has demonstrated good faith in dealing with plaintiff. Over the course of her five year tenancy the defendant, not surprisingly, has encountered occasional difficulties in meeting her rent obligation. See, note 2, infra. After entering into a stipulated judgment in June, 1990, defendant remained current in her rent until September, 1991. Although there were three late payments after the stipulated judgment, those payments were made in full within six to ten days of the default without the plaintiff having to initiate a summary process action to compel their payment. For reasons previously described October's rent went unpaid. However, once she received her October payroll checks in late November, defendant promptly tendered on December 5 the rent due for October, November and December. Significantly, defendant was not then represented by counsel. It cannot be suggested therefore that the tender was suggested by counsel as a tactic to assist in this summary process case. Rather defendant voluntarily attempted to cure her breach within approximately ten days of receiving those funds whose unavailability in October caused the breach in the first instance. The record in this case demonstrates that defendant's effort to remedy the breach was immediate, voluntary and in good faith. CT Page 8745
Throughout the course of these proceedings defendant has indicated her willingness to promptly make plaintiff whole for all unpaid rent. Defendant's counsel is holding in escrow all of the rent and/or use and occupancy due and owing, and has pledged to turn these funds over to plaintiff at the conclusion of this case. Under these circumstances the court is satisfied that the defendant has conducted herself in good faith. Although true, as pointed out by plaintiff, that it would have been preferable for defendant to have discussed with plaintiff her temporary financial difficulties when they arose, that failure of communication does not suggest that defendant has acted in bad faith. Pomeroy's Equity Jurisprudence, supra; Syncro Flame Burner Corp. v. Windham Development Corp., supra; Danpar Associated v. Falkha, supra.[6]
 E.
Under the particular facts and circumstances of this case, equity will prohibit a forfeiture. The court is mindful of plaintiff's legitimate concerns about the possible effect this decision may have on its rent collection policy and its need to insure that its tenants pay their rent regularly and on time. In this case, however, a number of factors make the granting of equitable relief appropriate. First, the breach was not wilful, deliberate or persistent. Although partially attributable to defendant's problems with her checking account, the non-payment was not principally attributable to failures on her part. Second, the defendant, without prompting, tendered the arrearage. Third, the defendant, if evicted, will lose what is tantamount to a perpetual lease. By contrast, the injury to the plaintiff — unpaid rent — is reparable. Fifth, informing all of these considerations is plaintiff's status as a public housing authority and its special mandate and obligation, albeit not without limitation, to provide housing to low and moderate income families.
It is again emphasized that the result in this case arises from the particular facts and circumstances of this matter. The interests of each party have been carefully weighed and evaluated. In the exercise of its discretion the court concludes that it is appropriate to sustain defendant's third special defense. Because it is not necessary to CT Page 8746 consider constitutional claims if a case can be resolved on non-constitutional grounds; State v. Perruccio, 192 Conn. 154
n. 6 (1984); defendant's first and second special defenses raising constitutional issues, will not be reviewed.
As the decision in this case was being prepared, the Supreme Court issued its latest decision in Fellows. See, Fellows v. Martin, 223 Conn. 152 (1992) (Fellows II). In that decision the Court affirmed the lower court's ruling, after remand in Fellows I, that equitable relief required that defendant pay to plaintiff the approximately fifty dollars that had been withheld from plaintiff. In this case, after judgment had been entered, but before a written decision had been rendered, plaintiff filed a motion for payment of use and occupancy into court, pursuant to General Statutes Sec. 47a-26. Relying on Wyngate v. Bozak, No. 8308-20390 (Hartford Housing Session, Decision #555, Aronson, J.), the court denied plaintiff's motion, ruling that with the entry of judgment for defendant, rent, not use and occupancy was now due and owing. In light of Fellows II, the court now orders that defendant pay into court, pending resolution of the appeal in this matter, the arrearage for September, October, November and December, 1991 and January, February and March, 1992. Because the case was decided on March 17, 1992, the court concludes that under Wyngate, any payments thereafter would be as rent, and therefore payable directly to the plaintiff.
HOLZBERG, J.