[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This contested summary process case concerns the issue of whether a tenant of a housing authority can invoke the equitable forfeiture doctrine for non payment within the five-year prohibition of reinstatement period of the plaintiff's rent collection policy. The defendant claims that federal law, federal regulations and court decisions prevent the eviction under the circumstances of this case. The plaintiff claims that the Housing Authority's rent collection procedures in effect since October 1992 prevent the defendant's reinstatement as a tenant since this alleged non payment occurred within five years from a prior court stipulated reinstatement based on non payment. CT Page 11221
FACTS
The plaintiff is the Housing Authority of the City of Norwalk who owns and manages the low income public housing project known as Washington Village. It is a Public Housing Agency in accordance with federal law. The defendant has been a tenant since 1990 occupying a four and one-half room apartment, 302-B, Washington Village, with her teenage daughter.
The plaintiff commenced a prior summary process action based on non payment of rent against the defendant in the Housing Session at Norwalk, SPINO 9302 13884, and obtained a judgment by stipulation on March 30, 1993. The stipulation stated "Upon fulfillment of the above conditions, the defendant shall be reinstated as a tenant in good standing on September 1, 1993." The conditions of reinstatement were (1) continued payment of $127 per month use and occupancy, on April 10, 1993, May 10, 1993, June 10, 1993, July 10, 1993 and August 10, 1993; (2) additional payments of the $90.00 arrears at the rate of $25 on the 10th day of April and May 1993 and $20 on the 10th day of June and July of 1993 and; (3) no violation of the terms and conditions of the lease, the rules and regulations of the Housing Authority and all state and federal laws relating to housing. The defendant did fulfill the conditions of the stipulation and was reinstated as a tenant in the good standing effective September 1, 1993.
The March 30, 1993 stipulations did contain one further condition which is the heart of dispute in this case; "In any further eviction proceedings against the defendant within 5 years of this date, there will be no agreement to reinstate the defendant."
The plaintiff adopted a rent collection policy in October 1992 which provides that no tenant will be reinstated within five years from the date of the prior judgment of an eviction based on non payment. This clause has been contained in every reinstatement stipulation filed in court by the plaintiff since its adoption in 1992. There was no evidence offered as to any exceptions to the policy nor the granting of any waivers from this rent collection policy by the plaintiff after its 1992 adoption. This policy was furnished in writing to all tenants of the plaintiff including the defendant in 1992.
On April 1, 1994, after the defendant had been reinstated CT Page 11222 as a tenant, the parties entered into a new written lease. The rent was established at $127 per month plus a $26 per month utility allowance. Rent was due on the first day of each calendar month with a nine-day grace period. The defendant failed to pay the rent due on September 1, 1994. The lease was month to month and was "automatically renewed" according to its terms. The lease contained a clause that it was subject to the plaintiff's rules and regulations. Other than that phrase, the plaintiff's 1992 rent collection policy was not set forth in the lease.
"Before a landlord may pursue its statutory remedy of summary process under § 47a-23, the landlord must prove its compliance with all the applicable preconditions set by state and federal law for the termination of a lease." JeffersonGarden Associates v. Greene, 202 Conn. 128, 143 (1987). The plaintiff mailed to the defendant a pretermination notice dated September 14, 1994. A sheriff also served a copy on the defendant. A copy was admitted to evidence. The September 14, 1994 pretermination notice complied with federal requirements.24 C.F.R. § 966.4 (d)(1)(ii). After the expiration of the federally required fourteen days the plaintiff issued and served a Notice to Quit dated September 30, 1994 which original notice to quit and it's return of service were admitted into evidence. The notice to quit complied with the statutory requirements and was served after the expiration of the federal termination notice.Connecticut General Statutes § 47a-23(a), (b), (c) and (e).
The defendant did not request a grievance hearing despite being advised by the plaintiff in the pretermination notice. The Notice to Quit required the defendant to vacate by October 10, 1994. The defendant failed to vacate the premises. This instant summary process action was commenced. "The rental agreement or lease shall not terminate until after the date specified in the notice for the lessee or occupant to quit possession or occupancy or the date of completion of the pretermination process, whichever is later." ConnecticutGeneral Statutes § 47a-23(e).
The payment records kept by the plaintiff established that from the reinstatement date of September 1, 1993 until August 31, 1994, the defendant's rental payments were always late and well beyond the nine-day grace period. Connecticut GeneralStatutes § 47a-15a. The earliest payment was on the 17th day of the month and the latest was the 29th day of the month. The CT Page 11223 defendant testified that for this period of time no payments were late. On cross examination the defendant admitted the plaintiff's payment records were accurate. On each of the these 12 months between September 19, 1993 and August of 1994 the plaintiff issued a federal pretermination notice. The rent was paid within the fourteen-day pretermination notice period. No notices to quit were issued or summary process lawsuits commenced. There was no evidence as to whether or not the plaintiff imposed or the defendant paid a late charge.
The defendant claimed that she had insufficient money to pay the September 1994 rent for reasons beyond her control. Her daughter had been living in South Carolina for the summer of 1994 and had grown out of all her clothes by September. The defendant claimed that she could not send her daughter to school with inappropriate clothing. Due to this lack of clothing the defendant held her daughter out of school for two weeks until school authorities threatened to call the Department of Children and Family. No documentation or witnesses were offered in corroboration of the defendant's testimony. The defendant claimed that she spent the rent money to purchase clothes for her daughter who then started to attend school. The defendant made no effort to find an alternative source of clothes, i.e., Salvation Army, friends etc.
On cross examination testimony was elicited that the defendant's sole source of income is AFDC of $549.00 per month plus $87.00 per month in food stamps. The defendant testified that her rent was $127.00 and she spent $250.00 in September 1994 on her daughter's clothing. During the month of September of 1994 the defendant spent $64.00 for cable television, $55.00 for hair braiding, and $200.00 for telephone bills. Thus she did not have the $127.00 for the September 1994 rent payment. The defendant testified that her family food costs per month are $130.00 cash plus $87.00 in food stamps.
The notice to quit permitted payments to be made after its service with the payments being reserved as use and occupancy only.Zitomer v. Palmer, 38 Conn. Sup. 341, 343 (1982). The notice to quit was served on September 30, 1994. The complaint was dated October 10, 1994. The rent and excess utility charge in a total of $159.49 was due on September 1, 1994. The defendant paid $160.00 on October 12, 1994 after the complaint was served. On October 1, 1994, $152.83 was due for rent and excess utility charges. $152.83 was paid on October 14, 1994. As of October 14, 1994, the defendant was essentially CT Page 11224 current with a small amount due by reason of a mathematical miscalculation. Since October 14, 1994, the defendant has paid nothing to the plaintiff despite her two payments in October of 1994 and the reservation of use and occupancy provision of the notice to quit.
The plaintiff claims that the arrears through February 1995 are $731.78. The defendant testified that she has contacted NEON, a social service agency in Norwalk, in November of 1994. NEON has offered to pay to the plaintiff an unspecified sum toward those arrears but only upon the condition that the defendant be reinstated as a tenant. The plaintiff, due to its rent collection policies, will not accept the NEON money conditioned upon the defendant's reinstatement. In addition the defendant has saved $400.00 cash. The defendant testified that the NEON money plus the $400.00 cash would not be sufficient to pay the plaintiff the entire $731.78. The defendant stated that she would pay the balance "from her own funds." The defendant is still on AFDC.
The defendant has looked for other housing in the Norwalk area and states that she cannot afford to; pay the $650.00 to $700.00 average monthly rent for available private housing. The defendant is 28 years old and lives with a teenage daughter. She attends Bullard Havens Regional Vocational Technical School. She testified that she will graduate with a nurse's aid certificate in June 1995. She stated that she has a guaranteed job with a respite care institution in Wilton, Connecticut upon graduation. Her job will pay her a minimum of $15.00 per hour for a 40-hour week. She will still remain on AFDC while reporting monthly to her case maintenance worker who will discontinue AFDC benefits shortly thereafter. She will continue to be eligible for food stamps and the medical program for one year.
The defendant's stated that she first applied to the plaintiff for public housing in 1982 and had to wait eight years to get an apartment. She believes she will be self sufficient with her nurse's aid employment and will not fall into arrears again.
Section 11(h) of the April 1, 1994 lease states as to "termination of lease" — "other than for serious or repeated violations of material terms of the lease such as failure to make payments due under the lease . . . or for other good cause." The defendant claims that the loss of public housing and its attendant financial benefits will adversely affect her teenage daughter; (1) she has her own room now and would not have her own room in a private apartment. A teenager needs her own space; (2) it may affect her CT Page 11225 school work and; (3) she may be required to change schools and even school districts.
LAW ON DEFENDANT'S SPECIAL DEFENSES
The defendant has filed four special defenses supported by a well-reasoned pretrial memorandum and a thorough analysis of the relevant statutes and case law at oral argument. The four special defenses are as follows:
1) Since the plaintiff is a public housing agency, public policy requires that the plaintiff provide to the defendant low income housing and the five years no reinstatement rent collection policy violates that well established public policy.
2) Federal statutes and regulations prohibit an eviction for a one month non payment because the requirements in the statutes and regulations are for "serious or repeated violations or other good cause"
3) The plaintiff is contractually obligated to reinstate the tenancy pursuant to the terms and conditions of the lease.
4) Under the circumstances of this case the equitable doctrine against forfeitures applies to prevent the plaintiff from evicting the defendant.
PUBLIC POLICY VOIDS THE FIVE YEARS NO REINSTATEMENT PROVISION
The source of the defendant's public policy argument is the United States Housing Act of 1937. 42 U.S.C. § 1437. The defendant claims that the plaintiff is legally bound to provide housing for families of lower income.
 "It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe and sanitary dwellings for families of lower income and consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs. No person should be barred from CT Page 11226 serving on the board of directors or similar governing body of a local public housing agency because of his tenancy in a low income housing project." 42 U.S.C. § 1437 Declaration of Policy.
This public policy has been consistently stated, restated, cited and applied in a succession of federal statutes and regulation, court decisions and management policies of local public housing agencies. The defendant does not dispute that this public policy, first enunciated by the United States Housing Act of 1937, applies to the Housing Authority of Norwalk as a "local public housing" agency.
In 1949 this policy was restated by Congress in 42 U.S.C. § 1441
declaring that the public policy of the federal government as applied to public housing agencies is that they are to provide housing for "families with incomes so low."
 "Congress declares that the general welfare and security of the nation and the health and living standards of it people require housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent house and a suitable living environment for every American family, thus contributing to the development and redevelopment of communities and to the advancement of the growth, wealth and security of the Nation . . . The policy to be followed in attaining the national housing objective established shall be: . . . 4) governmental assistance to eliminate substandard and other inadequate housing through the clearance of slums and blighted areas, to facilitate community development and redevelopment, and to provide adequate housing for urban and rural non farm families with incomes so low that they are not being decently housed in new and existing housing shall be extended to those localities which estimate their own needs and demonstrate that these needs are not being met through reliance solely upon private enterprise and without such aid . . ." 42 U.S.C. § 1441 Congressional declaration of national housing policy.
This statute and the public policy stated therein is still in full force and effect. CT Page 11227
On August 1, 1968 at 12 U.S.C. § 1701t Congress again reaffirmed that public policy stating; "this goal has not been fully realized."
 "The Congress affirms the national goal, as set forth in section 1441 of Title 42, of a decent home and a suitable living environment for every American family.
 The Congress finds that this goal has not been fully realized for many of the Nation's lower income families; that this is a matter of grave national concern; and that there exist in the public and private sectors of the economy the resources and capabilities necessary to the full realization of this goal.
 The Congress declares that in the administration of those housing programs authorized by this Act which are designed to assist families with incomes so low that they could not otherwise decently house themselves, and of other Government programs designed to assist in the provision of housing for such families, the highest priority and emphasis should be given to meeting the housing needs of those families for which the national goal has not become a reality; and in the carrying out of such programs there should be the fullest practicable utilization of the resources and capabilities of private enterprise and of individual self-help techniques."
 12 U.S.C. § 1701t Congressional affirmation of national goal of decent homes and suitable living environment for American families.
This statute and the public policy stated therein is still in full force and effect.
The defendant argues that an eviction based upon non payment of rent in September 1, 1994, is in violation of the strong public policy regarding the government's obligation to provide low income families with housing. This public policy is currently the law and has been the law since 1937.
The defendant supports her argument by citing the case of Thorpev. Housing Authority of the City of Durham, 393 U.S. 268,21 L.Ed.2d 474, 89 S.Ct. 518 (1969). "One of the specific purposes of the federal housing acts is to provide a decent home and a suitable living environment for every American family that lacks the financial means CT Page 11228 of providing such a home without governmental aid." Thorpe v. HousingAuthority of the City of Durham, supra 281. Durham held that federal regulations and federal statutes apply to local housing authorities.
The Department of Housing and Urban Development (HUD) regulations in question were promulgated pursuant to HUD's general rule making powers under the United States Housing Act of 1937. 42 U.S.C. § 1408,§ 8. The regulation in Durham was a HUD circular which required public housing authorities to state the reasons for an eviction. This regulation preventing a housing authority from evicting a tenant when there was no explanation for the eviction was held to be in furtherance of the goal set by the federal housing acts including the 1937 act.
HUD regulations were held to be mandatory. Durham has been the foundation of many decisions in the federal housing area including those in Connecticut. Jefferson Garden Associates v. Greene,202 Conn. 128 (1987).
The defendant next cites Thompson v. Washington,497 F.2d 626, [497 F.2d 626], (1973). "The term low rent housing means, decent, safe and sanitary dwellings within the financial reach of families of low income, and developed and administered to promote serviceability, efficiency, economy, and stability, and embraces all necessary appurtenances thereto. The dwellings in low-rent housing shall be available solely for families of low income." 42 U.S.C. § 1402, Thompson v. Washington, supra 633. "These provisions make it clear that rent limitation is the prime feature of these programs, and that the purpose of public housing is to make housing available to `families of low' income. The very premise of the program is that the rents will be substantially lower than those obtainable in the private market; otherwise public housing would not be necessary." Thompson v. Washington, supra 633.
Thompson involved a class action by six thousand tenants of a housing authority who were protesting rent increases on due process grounds. The court held that while the housing authority and the Department of Housing and Urban Development have discretion to determine the level and structure of rents in public housing, the agencies must be guided by the general directive that the rents are to be within the financial reach of families of low income. Tenants thus must be given notice of proposed rent increases and the right to participate in the process of official consideration of rent increases. The United States Housing Act of 1937 was cited as authority for this decision. "Furthermore, our construction of the CT Page 11229 Act furthers its purpose to provide public housing tenants with satisfactory and secure shelter by surrounding the benefit with such procedural protection as comports with basic fairness, discerned in the light of the contemporary regulatory climate." Thompson v.Washington, supra 639.
In order to demonstrate that courts still acknowledge the strong public policy for public housing authorities to provide housing for low income families, the defendant cites Rivera v. The Reading HousingAuthority, 819 F. Sup. 1323 (1993). "The United States Housing Act of 1937 (Housing Act) 42 U.S.C. § 1437 et seq. was enacted to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income." Rivera v.Reading Housing Authority, supra 1328.
Connecticut law clearly recognizes the strong public policy of providing decent and safe housing for low income families. The State of Connecticut has established its own affordable housing program.Connecticut General Statutes § 8-119bb. "It is hereby declared (1) that there exists in the state an acute shortage of decent, safe and sanitary dwelling accommodations for low income persons at rents which they can afford to pay; that, within the state, low income persons are forced to reside in unsafe and unsanitary accommodations: and that such persons are forced to occupy overcrowded and congested dwelling accommodations." Connecticut General Statutes § 8-119bb, Declarationof Policy, P.A. 86-362.
The defendant claims that the federal statutes and decisions support an equal public policy requirement imposed on local housing authorities of fiscal responsibility in the management of housing projects. The Act's express policy is "vesting in the local public housing agencies the maximum amount of responsibility in the administration of the low rent housing program, including responsibility for the establishment of rents and eligibility requirements . . . with due consideration to accomplishing the objectives of this Act while effecting economies." 42 U.S.C. § 1401 § 1,United Housing Act of 1937, Thorpe v. Housing Authority of Durham, supra 481.
"It is clear then that the purpose of the Housing Act is twofold: (1) to establish a program of federal aid to local agencies engaged in providing decent, safe, and sanitary housing for lower income families, while at the same time (2) vesting maximum responsibility in the administration of housing programs with local public housing CT Page 11230 authority. It is also clear that both Congress and HUD are greatly concerned with developing sound and efficient management programs which assure rental collection and fiscal stability." Rivera v. TheReading Housing Authority, supra 1329.
"Consistent with the Housing Act's declaration of policy to vest the maximum amount of power and responsibility with the local public housing authorities in order to promote efficient management, HUD, through its regulations directs each public housing authority to: adopt and implement policies and procedures embodying standards and criteria for tenant selection which take into consideration the needs of individual families for public housing and the statutory purpose in developing and operating socially and financially sound public housing projects." 24 C.F.R. § 960.204 (a), Rivera v. The Reading HousingAuthority, supra 1329.
Congress and HUD have granted limited power to local authorities to make reasonable policy decisions not specifically authorized in the Housing Act. James v. New York Housing Authority, 622 F. Sup. 1356,1361-62 (S.D.N.Y. 1985); Vandermark v. Housing Authority of York,663 F.2d 436, [663 F.2d 436], 439 (3rd Cir. 1981). The discretion of local housing authorities, however, is limited; it must be exercised "consistent with the objectives" of the Housing Act.42 U.S.C. § 1437. Hann v. Housing Authorityof Easton, 709 F. Sup. 605, 608 (E.D. Pa. 1989). The administration of a local housing authority is a difficult task and the concern for efficient management is of particular importance because the number of applicants exceeds the available housing.Gholston v. Housing Authority of Montgomery,818 F.2d 776, [818 F.2d 776], 781 (11th Cir. 1987). Normally the court will not view the actions of a local housing authority as a violation of the Housing Act or HUD regulations so long as the local housing authority requirements are "consistent with HUD regulations and in harmony with the overall policies of the Housing Act." Vandermark v. Housing Authority, supra 440, Rivera v. The Reading Housing Authority, supra 1330.
The Housing Act has prescribed the following factors to be considered in setting rents: "(A) the family size, composition, age, physical handicaps, and other factors which might affect the rent-paying ability of the family, and (B) the economic factors which affect the financial stability and solvency of the project."42 U.S.C. § 1402 Thompson v. Washington, supra 638. Although this instant case deals with the plaintiff's termination policies, the rent setting policy guidelines of the federal scheme are instructive. A balancing test is used to determine if the local housing authority policy violates the Housing Act or HUD regulations. The above rent setting CT Page 11231 statute recites as its purpose, "the competing objectives of improving the welfare of low-income families, on the one hand, and of conserving resources on the other." "The statute entrusts to the discretion of HUD the reconciliation of these competing objectives in their particular applications." Thompson v. Washington, supra 642.
Connecticut has recognized this balancing obligation of housing authorities when it declared that local housing authorities are exempt from the Connecticut Unfair Trade Practices Act (CUTPA). Connelly v.Housing Authority, 213 Conn. 354 (1990).
 "The defendant is subject to persuasive state regulation pursuant to the provisions of chapter 128 of the General Statutes governing municipal housing projects; 8-38 et. seq.; and to pervasive federal regulation pursuant to the relevant provisions of the United States Housing Act of 1937, 42 U.S.C. § 1437 et. seq., and its implementing regulations in title 24 of the Code of Federal Regulations. The state statute and the federal regulations set forth in great detail the municipal landlord's responsibilities and provide carefully balanced procedural and substantive remedies for public housing tenants in a variety of situations. These specific statutory remedies carefully balance the rights and obligations of municipal housing authorities and their tenants, and prescribe specific procedures designed to implement repair or rehabilitation of dwellings. None of these specific statutory provisions makes reference to CUTPA. The carefully crafted equilibrium between the competing interests of municipal housing authorities and public housing tenants embodied in title 8 and the HUD regulations would be upset by holding that a CUTPA remedy, lacking the procedural prerequisites and specifically tailored remedies of either 8-38 et seq. or the federal regulations, applies in addition to those remedies." Connelly v. Housing Authority, supra 362-363.
"The Housing act encourages the development of sound and efficient management programs and practices to assure rental collection. The Housing Act states, in pertinent part, that; every contract for annual contributions shall provide that . . . the public housing agency shall comply with such procedures and requirements as the Secretary may prescribe to assure that sound management practices will be followed in the operation of the project, including requirements pertaining to . . . the establishment of satisfactory procedures designed to assure the prompt payment and collection of CT Page 11232 rents . . ." 42 U.S.C. § 1437d(c)(4)(B). Rivera v. The ReadingHousing Authority, supra 1329.
None of the statutes or regulations specifically forbid the use of an automatic five years no reinstatement rule as part of a rent collection policy of a local housing authority. On the other hand no statute or regulation specifically authorizes such a rule.
Under Connecticut General Statutes § 8-119bb, et seq. a tenancy can only be terminated by allegations and proof of good cause. The due process clauses of the United States Constitution and the Connecticut Constitution prohibit the eviction of a tenant from a unit receiving assistance from the Affordable Housing Program unless good cause is alleged. Ashley Willard Asylum Associates v. Rodriguez, H-1015, October 19, 1993 (Holzberg, J.). Judge Holzberg cited with approval a 1974 Federal Second Circuit case. "The federal government, the states and the cities which have extended aid to low and middle income housing hardly expected that a tenant could be evicted at the end of his term simply at the landlord's whim, when substitute housing could be obtained, if at all only, with delay, disruption and living habits and expense." Lopez v. Henry Phipps Plaza South,498 F.2d 937, [498 F.2d 937], 943 (2nd Cir. 1974).
The allegations of this complaint are non payment. Non payment has been held to be a good cause for eviction under the public policy of the State of Connecticut. C.G.S. § 47a-23c(b)(1)(A): C.G.S §47a-23(a)(1)(D), Case law has held that non payment of rent is sufficient good cause for the eviction of a public housing authority tenant.East Hartford Housing Authority v. Parker 7 CSCR 1185, 1187, H-976, August, 7, 1992 (Holzberg, J). Non payment is "good cause" for eviction under the protected tenant statute. O'Brien Properties v.Rodriguez, 215 Conn. 367, 374 (1990). Southland v. Vernon, 1 Conn. App. 439,
448 (1984).
Under the facts of this case the federal statutes, federal regulations and the cases cited do not prevent a public housing authority from evicting a tenant on the basis of non payment of rent.
The defendant claims that the five-year reinstatement prohibition established by the plaintiff in 1992 as contained in the March 30, 1993 court stipulation violates the public policy of the Housing Acts and their related regulations. In order to decide this issue the court is required to balance tenant public policy concerns with that of the housing authority public policy concerns. The plaintiff has CT Page 11233 raised legitimate concerns about the viability of its rent collection policies and the need it has to insure that tenants pay their rent fully, regularly and on time. The defendant on the other hand, if evicted, "will lose what is tantamount to a perpetual lease." EastHartford Housing Authority v. Parker, H-976, supra 21. On balance the plaintiff would be hard pressed to prove that the Washington Village project would be rendered bankrupt by the failure of the defendant to pay the $127.00 due on September 1, 1994. On the other hand, the eviction of the defendant would deprive her of the continued subsidized housing she has enjoyed for five years. The most offensive characteristic is the fact that the imposition of the five years no reinstatement policy is automatic. No flexibility, exemption or waiver is permitted. According to the plaintiff even if the court is inclined to grant equitable relief and prevent forfeiture, the plaintiff's five year policy would prevent that. Fellows v. Martin,217 Conn. 57 (1991).
The plaintiff by imposing such a rent collection policy is imposing an arbitrary standard, a standard containing no balancing factors. This court agrees with the defendant that the automatic five-years no reinstatement policy of the Norwalk Housing Authority is in violation of the public policy of the Housing Acts.
Notwithstanding, that conclusion, the plaintiff's rent collection policy including the five-years no reinstatement policy can be one of the factors used by the court to balance the equities of the parties in determining whether or not to grant equitable relief from forfeiture. Fellows v. Martin, supra 63.
SERIOUS OR REPEATED VIOLATIONS ARE NEEDED TO SUPPORT AN EVICTION
The defendant's second argument is that the federal statutes and regulations do not authorize an eviction unless there is a repeated or serious violation or other good cause. The defendant's argues that a single month's non payment is insufficient under federal standards for an eviction from a public housing project. The defendant argues that section 11(b) of the lease at page 4 states "serious or repeated violations such as failure to make payments or for other good cause." The defendant stresses the use of the plural "payments." The defendant further argues that the federal statutes in that regard42 U.S.C. § 1437d(1)(4) refers to failure to make "payments" in the plural as a sufficient "good cause." The plaintiff on the other hand points to 24 C.F.R. § 966.4(1)(3) (April 1, 1994, Edition), referring to good cause as non payment of "rent" in the singular. The defendant counters that argument by quoting 24 C.F.R. § 966.4(1)(2)(i) "PHA shall CT Page 11234 not refuse to review for repeated violations such as failure to make payments" and 24 C.F.R. § 966.4(1)(2) "Grounds for termination . . . such as failure to make payments due under the lease."
The defendant in support of its argument cites the case ofLoRicco v. Felix, NH-548, January 14, 1991, (Vertefeuille J.) wherein a Section 8 one month lateness was not a "material non compliance" and thus did not support good cause for eviction. "No evidence was presented that the defendant chronically paid her portion of the rent late. From the evidence presented, late payment of the May rent was an isolated breach of the terms of the lease, which was followed by prompt payment or tender of the tenant's portion of the rent for the next three months, June, July, and August. This action is not based on good cause as required by the lease and federal regulation."LoRiccio v. Felix, supra 4.
The defendant cites Brezina v. Dowdall, 472 F.2d 82, [472 F. Sup. 82], (1979) for support of the position that failure to reinstate a continuing housing assistance payments contract for a 67-year-old woman who had low income is a violation of the due process rights of the tenant and is in the violation of the public policy established by the United States Housing Act of 1937. The plaintiff in Brezina alleged "substantial compliance" with the regulations promulgated under the United States Housing Act of 1937. The court held that such an allegation was sufficient for the court to examine the "substantial compliance" under due process standards.
The defendant cites the Connecticut case of East Hartford HousingAuthority v. Parker, H-976, supra. Reinstatement was permitted even though the tenant in a 21-month time frame had been guilty of two non payments and three late payments. The court citing five equitable factors held that on balance the non payment history not to be a serious or repeated violation of the lease. This was the holding despite a prior court stipulation due to non payment. In Parker the court (Holzberg, J.) in a carefully constructed 24 page decision discussed many of the issues relevant to the facts of this case.
The court concludes that the evidence has established that the defendant has been guilty of non payment on more than one occasion. The initial occasion of non payment occurred prior to March of 1993. It resulted in a stipulated judgment, Housing Authority of the City ofNorwalk v. Sonia Whitaker, SPNO 9302-13884. Though the defendant made timely payments in accordance with that stipulation, the defendant failed to make timely payments for each month thereafter starting in September of 1993. That required the plaintiff to prepare and serve CT Page 11235 a federal pretermination notice on each of those twelve occasions. This pattern of non payment culminated with the absolute non payment in September of 1994. The court concludes that the defendant has been guilty of non payment on more than one occasion and that the non payment is of such a continued pattern as to be a "good cause" for eviction. Rivera v. Reading Housing Authority, supra 1329.42 U.S.C. § 1437d(c)(4)(B). Jefferson Gardens Associates v. Greene, supra 145-46, LoRicco v. Felix, NH-548, supra 5 24 C.F.R. § 882.511(c)(1)(i),Mobilia, Inc. v. Santos, 4 Conn. App. 128, 131-132 (1985).
THE PLAINTIFF IS NOT CONTRACTUALLY OBLIGATED TO REINSTATE
The defendant argues in the third special defense that the plaintiff is contractually obligated to reinstate the tenancy. The basis of that argument is the well-known case of Warner v. Konover,210 Conn. 150, (1989). "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement of Contracts (Second) § 205, Warner v.Konover, supra 154. A duty of good faith and fair dealing is an obligation of both the landlord to the tenant and the tenant to the landlord. Central New Haven Development Corporation v. LaCrepe, Inc.177 Conn. 212, 217 (1979).
In analyzing and balancing the respective duties and obligations of a landlord and a tenant, the court must consider "the justified expectations of the other party." Warner v. Konover, supra 155. It is the public policy of the public housing authority from 1937 continuously to date to provide safe, decent and low cost housing to low income families. The defendant's expectations as a tenant, is so long as the rent is paid, there will be no eviction. "Defendant has what amounts to a perpetual lease with a reasonable expectation of continued occupancy for an indefinite period of time." East HartfordHousing Authority v. Parker, H-976, supra 11. "Defendant's expectations of a continuing tenancy constitutes a property interest protected by the Fourteenth Amendment to the United States Constitution and Article First, Section 8 of the Connecticut Constitution. The process to which the tenant is entitled is the allegation and proof that her tenancy should be terminated for good cause." Ashley Willard Asylum Associates v. Rodriguez, supra 10; Joy v. Daniels, 479 F.2d 1236, [479 F.2d 1236], (4th Cir. 1973);Lopez v. Henry Phipps Plaza South, supra 943.
The court has already concluded that the defendant has been guilty of non payment of such a continuous pattern as to amount to "good cause" under the federal standard. Therefore since the CT Page 11236 defendant has violated the terms and conditions of her lease, she can have no legitimate expectancy in a continuation of the tenancy unless equity intervenes as alleged in the Fourth Special Defense. The plaintiff is not contractually obligated to reinstate under Warner v.Konover.
The defendant also argues that the continued expectancy of the parties has been changed by a new lease entered into on April 1, 1994. The defendant claims that the five-years no reinstatement stipulation no longer is in full force and effect since the tenancy has been reinstated and supplanted by a new lease. The defendant argues that a new contract in regards to the same matter if inconsistent with the prior contract the new contract controls. Riverside Coal Co. v.American Coal Co., 107 Conn. 40, 47 (1927).
"As a general rule, when the new contract is in regard to the same matter and has the same scope as the earlier contract and the terms of the two are inconsistent either in whole or in a substantial part, so that they cannot subsist together, the new contract abrogates the earlier one in toto and takes its place even though there is no express agreement that the new contract shall have that effect."Riverside Coal Co. v. American Coal Co., supra 47. Goodrich v.Stanley, 24 Conn. 613, 620-621 (1856).
The defendant argues that if the landlord's intention was to have the five-years no reinstatement policy continued it should have been contained as a clause in the new lease. This argument fails because the rent collection policy including its five-years no reinstatement rule is included in the new lease. The lease in Section 8 specifically states that the rules and regulations of the plaintiff as the public housing authority are incorporated in the terms of the lease. Therefore, the landlord and tenant are subject to the five-years no reinstatement rule as a general policy. The five-years no reinstatement rule contained in the stipulation of March 30, 1993 was not abrogated by the April 11, 1994 new lease. The plaintiff is not contractually obligated to reinstate the defendant as a tenant in good standing.
 THE EQUITIES OF THE PARTIES MUST BE BALANCED TO DETERMINE IF EQUITY WILL PREVENT A FORFEITURE
The fourth special defense is directed to the court's equitable powers. The defendant claims that based upon equitable factors the defendant is entitled to be reinstated as a tenant in good standing.Fellows v. Martin, supra 63; East Hartford Housing Authority v.CT Page 11237Parker, supra 10; Housing Authority v. Anthony, SNBR-397, March 8, 1994 (Melville, J.). The defendant filed a special defense of equitable relief from forfeiture. Although the pleadings in this case were closed prior to the December 20, 1994 decision of the Appellate Court, the defendant did meet the recently required special defense pleading mandate. Oakland Heights Mobile Home Park, Inc. v. JamesSimon, 36 Conn. App. 432 (December 20, 1994).
The equitable doctrine of relief from forfeiture is applicable to residential nonpayment summary process actions and was made so byFellows v. Martin. The doctrine of "equity abhors forfeiture" had its Connecticut genesis in Pierce v. Staub, 78 Conn. 459, 466 (1906). "Equity abhors, and the law does not favor, a forfeiture; and if there be any difference between the defendant's position as determined by the rules of law, and his position as determined by the rules of equity, it must be judged by the latter." Pierce v. Staub, supra 466
That theory continued with:
Thompson v. Coe, 96 Conn. 644, 652 (1921)
F. B. Fountain Co. v. Stein, 97 Conn. 619, 624 (1922)
Petterson v. Weinstock, 106 Conn. 436, 445 (1927)
Xanthakey v. Hayes, 107 Conn. 459, 560 (1928)
Seaboard Oil Co. v. Williamson, 1 Conn. Sup. 47, 56 (1935)
Galvin v. Simons, 128 Conn. 616, 620 (1942)
Syncro Flame Burner Corporation v. Windham Development Co.,11 Conn. Sup. 28, 31 (1942)
Nicoli v. Frouge Corp. , 171 Conn. 245, 247 (1976)
Steinegger v. Fields, 37 Conn. Sup. 534, 536 (1980)
Danpar Associates v. Falkha, 37 Conn. Sup. 820, 823 (1981)
S.H.V.C., Inc. v. Roy, 37 Conn. Sup. 579, 584 (1981)
Zitomer v. Palmer, 38 Conn. Sup. 341, 345 (1982)
Southland Corp. v. Vernon, 1 Conn. App. 439, 445 (1984) CT Page 11238
Mobilia, Inc. v. Santos, 4 Conn. App. 128, 133 (1985)
R R of Connecticut Inc. v. Sleigler, 4 Conn. App. 240, 244 (1985)
Seven Fifty Main Street Assoc., v. Spector, 5 Conn. App. 170, 174
(1985)
Elliot v. South Isle Food Corp. , 6 Conn. App. 373, 377 (1986)
Haddad v. Francis, 40 Conn. Sup. 567, 580 (1986)
Tartaglia v. R.A.C. Corp, 15 Conn. App. 492, 494 (1988)
Fellows v. Martin, 217 Conn. 57, 65 (1991)
Fellows v. Martin II, 223 Conn. 152, 157 (1992)
"This rule is based upon the notion that such conditions and forfeiture are intended merely as security for the payment of money.Thompson v. Coe, supra 653. 1 Pomeroy's Equity Jurisprudence (3rdEd.) 453.
The equitable considerations of Fellows v. Martin, and its progeny require the balancing of the equities of the parties. "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." Kakalik v. Bernardo, 184 Conn. 386, 395 (1981).
The court finds that this case is an opportunity for a listing of all the equitable factors relevant to non payment summary process cases.
The court has determined that there are nine such factors:
1. The delay has been slight and reasonable. Fountain Co. v. Stein, supra 624; Nicoli v. Frouge Corporation, supra 247.
2. The loss caused little or no damage to the landlord; i.e., loss to the lessor was small. Fountain Co. v. Stein, supra 624; Nicoli v. Frouge Corporation, supra 247.
3. The loss was due to inadvertence or negligence not gross or wilful. Fountain Co. v. Stein, supra 624, Mobilia, Inc. v. Santos, supra 131-137. CT Page 11239
4. "When not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the conditions of the lease, ", i.e., The forfeiture will entail great loss to the tenant. Fountain Co. v. Stein, supra 624,
Nicoli v. Frouge Corporation, supra 247.
5. Whether in the absence of equitable relief, a party will suffer a loss wholly disproportionate to the injury to the other party. Fellows v. Martin, supra 66.
6. Whether the injury to the other party is reparable, i.e., remedied by payment of money not forfeiture. Fellows v. Martin, supra 66.
7. The party seeking equitable relief must have clean hands. Fellows v. Martin, supra 67; East Hartford Housing Authority v. Parker, H-935, supra 10.
8. The tenant must be in good faith in curing or attempting to cure the fault. East Hartford Housing Authority v. Parker, supra 1188 or there is a good faith dispute over the meaning of a lease. Fellows v. Martin, supra 69. (Payment or tender of all arrears of rent with interest.) Danpar Associates v. Falkha, supra 823, East Hartford Housing Authority v. Parker, supra 22).
9. If the tenant cannot make a full tender to the landlord of the arrearage, then there must be a good reason to believe that the landlord will be made whole with reasonable protection to the landlord. Housing Authority of Stamford v. Anthony, SNBR-397, March 8, 1994 (Melville, J.), Fellows v. Martin II, supra 155, East Hartford Housing Authority v. Parker, supra 22.
The court has considered the equities and balanced the equities in this matter. The court is mindful of the public policy as espoused by the United States Housing Act of 1937 as well as the de facto permanent tenancy created by the Public Housing Act, recognized as late as 1993 in East Hartford Housing Authority v. Parker. It is also mindful that the five-year rent collection policy no reinstatement provision is an equitable factor to be balanced between the parties. CT Page 11240
The court therefore balances the equities in favor of the plaintiff. There is no need to recite the facts regarding each of the nine equitable factors since the facts are already recited in this opinion.
A judgment for immediate possession will enter in favor of the plaintiff, Housing Authority of the City of Norwalk, against the defendant, Sonia Whitaker.
BY THE COURT,
KEVIN TIERNEY, JUDGE